OPINION
{¶ 1} Defendant, Travis White, appeals from his conviction and sentence for felonious assault.
 {¶ 2} On January 4, 2002, nineteen year old Robert Kirkland and thirteen year old Adam Hurlburt walked to a Dollar General Store in their neighborhood where they purchased plastic guns that shoot confetti-like string. While walking back home, the boys began shooting the guns at cars passing on the street. At one point Hurlburt threw a piece of plastic, hitting a red hatchback vehicle that was passing by. When the driver stopped, the boys fled. The driver chased them.
 {¶ 3} When Robert Kirkland looked back he saw a while male kicking Adam Hurlburt, who was lying on the ground. The assailant was about twenty-three years of age and wore a black baseball cap turned backwards, tan baggie pants, and a black coat. Kirkland ran to a nearby home and summoned help.
 {¶ 4} When police arrived they found Hurlburt lying in the street. He had been severely beaten and his face was bloody, bruised, and swollen. He could not open his eyes or sit up without assistance. Hurlburt was taken to Miami Valley hospital where he remained for two days.
 {¶ 5} As a result of injuries he suffered in this attack, Hurlburt missed six weeks of school and often experienced nightmares. He developed eye problems akin to lazy eye, and had black eyes for months. Hurlburt has a permanent scar from the attack, and for one year he was afraid to go outside.
 {¶ 6} Hurlburt's mother posted reward flyers at area businesses that included a picture of Hurlburt and telephone numbers to call with any information relating to the assault. Sometime during January 2002, while Dana Horstman was at a Kwik and Kold drive through with Defendant Travis White, Nick Widner, and another person, Horstman saw one of the reward flyers and mentioned the assault on Hurlburt. Defendant responded: "We did that. For real, we did that," referring to himself and Nick Weidner. Defendant did not appear to be joking, according to Horstman. When she brought up the attack on Hurlburt several more times, each time Defendant warned Horstman not to talk with anyone else about it.
 {¶ 7} Horstman eventually called the Hurlburts and gave them Defendant's name and address as a possible suspect. That information was relayed to police. When police went to Defendant's residence they discovered a red Honda Prelude hatchback, similar to the vehicle Hurlburt's assailant had been driving.
 {¶ 8} Police prepared a photospread on January 24, 2002, from which Robert Kirkland identified Defendant White as Adam Hurlburt's assailant. Hurlburt was not able to identify his attacker. Later, after Hurlburt had seen the man who attacked him in the neighborhood, police rearranged the same pictures in the photospread and showed it to Hurlburt on March 21, 2002. This time Hurlburt identified Defendant as his assailant.
 {¶ 9} Defendant was indicted on one count of felonious assault. R.C. 2903.11(A)(1). Defendant filed a motion to suppress the photospread identifications of him as the assailant, claiming that the procedures used were unduly suggestive and the identifications unreliable. Following a hearing, the trial court overruled Defendant's motion to suppress the identification evidence. The matter proceeded to a jury trial and Defendant was found guilty as charged. The trial court sentenced Defendant to six years in prison to be served concurrently with the sentence imposed in Case No. 1999-CR-2242.
 {¶ 10} Defendant has timely appealed to this court from his conviction and sentence.
 {¶ 11} First Assignment of Error
 {¶ 12} "Appellant was denied his constitutional rights to present a complete defense, to confront a witness against him, to due process, and to a fair trial when the trial court erred in declaring the complainant to be an unavailable witness and in admitting testimony from the suppression hearing at trial."
 {¶ 13} Defendant complains that the trial court abused its discretion and deprived him of his constitutional rights of confrontation, due process and a fair trial by admitting hearsay evidence of Adam Hurlburt's testimony from the suppression hearing at trial under the former testimony exception to the rule against hearsay. Evid. R. 804(B)(1).
 {¶ 14} Adam Hurlburt, the victim, testified at the hearing on Defendant's motion to suppress the pretrial identifications from photospreads. Hurlburt was subpoenaed by the State to testify at the subsequent trial, but failed to appear. The State asked the trial court to admit Hurlburt's testimony from the suppression hearing at trial as a hearsay exception, pursuant to Evid. R. 804(B)(1). Defendant objected. An evidentiary hearing was held, following which the trial court granted the State's request and admitted Hurlburt's testimony from the suppression hearing.
 {¶ 15} A trial court has broad discretion regarding the admission or exclusion of evidence and its exercise of that decision will not be disturbed on appeal absent an abuse of discretion. State v. Woling,98 Ohio St.3d 44, 2002-Ohio-7044. An abuse of discretion means more than just an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 16} When a witness is unavailable for trial the witness's prior testimony may be admitted in evidence if the proponent of that evidence demonstrates that the witness is unavailable to testify at trial and the witness's prior testimony bears an adequate indicia of reliability. Ohiov. Roberts (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; State v.Madison (1980), 64 Ohio St.2d 322; State v. Howard (June 20, 2003), Montgomery App. No. 19413, 2003-Ohio-3235. Evid. R. 804(B)(1) codifies the common law hearsay exception for former testimony and provides:
 {¶ 17} "(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 {¶ 18} "(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."
 {¶ 19} Defendant argues first that the State failed to prove that Adam Hurlburt was unavailable as a witness at trial. In support of that position Defendant points out that the trial court made no effort to compel Hurlburt's attendance at trial after he refused to obey the State's subpoena and did not appear for trial, the trial court never interviewed Hurlburt to confirm that he would refuse to testify at trial, and the trial court never ordered Hurlburt to testify at trial. Evid. R. 804(A) defines unavailability:
 {¶ 20} "(A) Definition of unavailability. `Unavailability as a witness' includes any of the following situations in which the declarant:
• * *
 {¶ 21} "(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so."
 {¶ 22} In order to be unavailable pursuant to Evid. R. 804(A)(2), the witness must disobey a court order to testify. Weissenberger, Ohio Evidence (2004), Section 804.4.
 {¶ 23} A review of the record, including the hearing held on the State's request to admit Hurlburt's former testimony as well as the suppression hearing, discloses that during both days of the suppression hearing Hurlburt testified as a defense witness and answered some of defense counsel's initial questions. For example, Hurlburt testified that when shown a photospread on January 24, 2002, that contained a picture of Defendant, he was unable to identify anyone depicted in that photospread as his assailant. Two and one-half months later, however, on March 21, 2002, when police showed Hurlburt that same photospread again, but with the pictures arranged in a different order, Hurlburt identified Defendant as his assailant. However, at some point on both days of the suppression hearing Hurlburt completely shut down and refused to answer any more of defense counsel's questions about the attack on the identify of the perpetrator, despite repeated orders from the trial court to answer defense counsel's questions. Notably, Hurlburt refused to discuss or explain why he was able to identify Defendant from a photospread in March when he was not able to identify Defendant soon after the crime occurred in January. Hurlburt told his mother he would not talk to counselors and that he was the victim, not a witness, and should not have to be in court testifying.
 {¶ 24} Furthermore, at a pretrial conference with prosecutor on October 27, 2003, just three weeks before trial, Hurlburt freely talked about various matters unrelated to this case before the conference began, but once prosecutors began asking him about the assault Hurlburt once again completely shut down and refused to speak or answer any further questions. Although the State subpoenaed Hurlburt for trial and the victim witness advocate reminded him of upcoming court dates, Hurlburt did not appear for trial and stayed home instead.
 {¶ 25} Given the totality of these circumstances and the trial court's experience with Hurlburt, it is obvious that this young boy suffered considerable trauma as a result of this beating. We understood the trial court's desire to not further traumatize this victim. Nevertheless, we conclude that the trial court did not take the required steps before declaring Hurlburt unavailable for trial. The trial court made no effort to compel Hurlburt's attendance at trial after he refused to obey the State's subpoena, and the court never spoke directly with Hurlburt to ascertain whether Hurlburt would disobey a court order to testify at the trial. The trial court's declaration of unavailability was premature and an abuse of discretion on these facts.
 {¶ 26} With respect to the admission at trial of Hurlburt's former testimony at the suppression hearing pursuant to Evid. R. 804(B)(1), we conclude that Defendant had a similar "motive" for developing Hurlburt's testimony at the suppression hearing as would exist at trial, which was to question the reliability of Hurlburt's identification of Defendant as his attacker, as the identity of the perpetrator was the central issue in this case. An identical motive to develop testimony is not required by Evid. R. 804(B)(1), only a similar motive. Howard, supra. That exists here.
 {¶ 27} Defendant's main argument, however, is that he did not have a sufficient or meaningful "opportunity" to test and develop Hurlburt's testimony at the suppression hearing because Hurlburt was uncooperative and persistently refused to answer defense counsel's questions despite repeated court orders to do so. This is particularly true of defense counsel's inquiry regarding why Hurlburt could not identify Defendant from a photospread in January 2002 but did so in March 2002 when shown that same photospread with the pictures rearranged in a different order. It is the opportunity to meaningfully test and develop by direct and cross-examination the witness' testimony at the prior proceeding where the witness is under oath, that provides the indicia of trustworthiness and reliability that satisfies the confrontation clause. See: State v.Woods (1988), 48 Ohio App.3d 1; Howard, supra. See Also: Crawford v.Washington (2004), ___ U.S. ___, 124 S.Ct. 1354, 158 L.Ed.2d 177.
 {¶ 28} The State responds that the record of the suppression hearing demonstrates that defense counsel was not "completely stymied" in their attempt to develop Hurlburt's former testimony because he answered some of defense counsel's questions and the answers that Hurlburt gave discredits the notion that his photographic identification of Defendant was unreliable.
 {¶ 29} Hurlburt testified that he was not able to identify his attacker from the first photospread shown to him in January 2002. According to the State, this shows that the first photospread was not unduly suggestive. Likewise, because the second photospread shown to Hurlburt in March 2002 is the same one previously shown to him in January, but with the pictures arranged in a different order, it too is not unduly suggestive. Moreover, Hurlburt testified that no one told him to select photo number five in the second (March) photospread, which is Defendant's photograph. Finally, when defense counsel asked Hurlburt why he didn't recognize his attacker in the January photospread but did see him in the March photospread, Hurlburt replied: "Because I saw him in the drive-through," implying that Hurlburt had seen his assailant again after he had viewed the first photospread. Hurlburt refused, however, to elaborate any further or answer any additional questions about that.
 {¶ 30} We are unpersuaded by the State's argument. An adequate opportunity to meaningfully test and develop by cross-examination the credibility and reliability of testimony of a witness who is under oath at a prior proceeding, which is crucial to satisfying the confrontation clause for purposes of Evid. R. 804(B)(1), Howard, supra, presupposes that the witness is cooperative and fully answers the questions put to him by counsel at the prior proceeding. That did not happen here.
 {¶ 31} Clearly, Hurlburt was uncooperative during both days of the suppression hearing and he completely shut down and refused to answer defense counsel's questions despite repeated court orders to do so. Under those circumstances, we cannot reasonably conclude that Defendant had an adequate and meaningful opportunity to test and develop Hurlburt's former testimony at the suppression hearing. Thus, Hurlburt's testimony at the suppression hearing does not bear an adequate indicia of trustworthiness and reliability sufficient to satisfy the confrontation clause. The trial court abused its discretion in admitting Hurlburt's suppression hearing testimony at Defendant's trial pursuant to Evid. R. 804(B)(1) because that evidence violated Defendant's confrontation rights.
 {¶ 32} Nevertheless, given the other overwhelming evidence of Defendant's guilt, we conclude that the trial court's error in admitting Hurlburt's former testimony was harmless beyond a reasonable doubt. Hurlburt's companion at the time of the assault, Robert Kirkland, identified Defendant in the January 2002 photospread as the man who attacked Hurlburt. The vehicle driven by the assailant was a red hatchback. Dana Horstman, Defendant's friend, testified that Defendant sometimes drove a red hatchback vehicle. When police went to Defendant's residence they discovered a red Honda Prelude hatchback. Most importantly, Defendant admitted to Horstman that he was responsible for the attack on Hurlburt, and he warned Horstman not to talk to other people about that incident. Due to this overwhelming evidence of Defendant's guilt, the trial court's error in admitting Hurlburt's suppression hearing testimony was harmless beyond a reasonable doubt.
 {¶ 33} The first assignment of error is overruled.
 {¶ 34} Second Assignment of Error
 {¶ 35} "Appellant was denied his constitutional rights to confront a witness against him, to due process, and to a fair trial when the trial court erred in admitting inadmissible, prejudicial, identification hearsay and in denying a mistrial."
 {¶ 36} Defendant objected to any testimony by Det. Salyer concerning Adam Hurlburt's statements to him identifying Defendant from a photospread because such testimony would constitute inadmissible hearsay. The trial court overruled Defendant's objection and held that the evidence would be admissible per Evid. R. 801(D)(1)(c), which defines certain prior statements by a witness identifying a person as not being hearsay. During Det. Salyer's testimony at trial, the following occurred:
 {¶ 37} "MS. BALLARD: Okay. In fact, Detective, who was the only individual that both Adam and Robert have identified to date as the attacker from January 4?
 {¶ 38} "MR. SWIFT: Objection.
• * *
 {¶ 39} "THE COURT: Overruled.
 {¶ 40} "DETECTIVE SALYER: Travis White." (T. 248-249).
 {¶ 41} Subsequently, the trial court determined that its ruling had been in error because the hearsay exception in Evid. R. 801(D)(1)(c) does not apply unless the declarant testifies at trial and is subject to cross-examination concerning the identification statement. Robert Kirkland testified at trial, but Hurlburt did not. Therefore, the court erred when it admitted evidence concerning Hurlburt's identification of Defendant. Nevertheless, the trial court reasoned that its erroneous evidentiary ruling was not prejudicial to Defendant because Salyer testified that Hurlburt did not make any identification when shown the photospread. While that accurately reflects Salyer's testimony regarding the photospread shown to Hurlburt on January 24, 2002, the trial court's reasoning ignores Salyer's above-quoted testimony, which indicates that both Hurlburt and Kirkland had identified Defendant as the attacker prior to trial. Hurlburt identified Defendant in a March 2002 photospread.
 {¶ 42} Identification testimony is not admissible per Evid. R. 801(D)(1)(c) unless the person who made the out-of-court identification testifies at trial and is subject to cross-examination. Weissenberger, Ohio Evidence Courtroom Manual (2005), at p. 344; Evid. R. 801(D)(1)9c). The State concedes in its appellate brief that the trial court erred by permitting Det. Salyer to testify that Adam Hurlburt had identified Defendant as his attacker. We conclude, however, that the error is harmless beyond a reasonable doubt because of the overwhelming evidence of Defendant's guilt, discussed in connection with the first assignment of error.
 {¶ 43} Given the overwhelming evidence of Defendant's guilt that was properly admitted, there is no reasonable possibility that Det. Salyer's improperly admitted statement that Hurlburt had identified Defendant contributed to Defendant's conviction. Thus, the error was harmless beyond a reasonable doubt.
 {¶ 44} The second assignment of error is overruled.
 {¶ 45} Third Assignment of Error
 {¶ 46} "The trial court erred in failing to suppress unreliable identification testimony."
 {¶ 47} Defendant argues that the identifications of him from photospreads made by Robert Kirkland and Adam Hurlburt should have been suppressed because the identification procedures utilized by police were unduly suggestive, rendering those identifications unreliable and inadmissible. We disagree.
 {¶ 48} Identification evidence based upon or derived from pretrial identification procedures, including photographic displays, is subject to suppression when the procedure used is so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Simmonsv. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247;Neil v. Biggers (1972), 409 U.S. 188, 198-199, 93 S.Ct. 375, 34 L.Ed.2d 401. An identification which is the product of a suggestive procedure is nevertheless admissible if, considering the totality of the circumstances, it is reliable. Manson v. Braithwaite (1977), 432 U.S. 98,97 S.Ct. 2243, 53 L.Ed.2d 140; State v. Jells (1990), 53 Ohio St.3d 22, 27. In determining reliability courts consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty when identifying the suspect at the time of the confrontation; and (5) the length of time elapsed between the crime and the identification. Biggers, supra.
No inquiry concerning the reliability of identification evidence is necessary, however, when there is no basis to conclude that it was the product of an impermissibly suggestive confrontation procedure. State v.Beddow (March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 49} The evidence presented at the suppression hearing demonstrates that Det. Salyer prepared a photographic lineup that included Defendant's photograph. The lineup was generated by a computer. Det. Salyer entered into the computer various hair and facial characteristics for the suspect and the computer then generated five other photographs of individuals with similar features. The six photographs were arranged on a single page, with Defendant's photograph being in the number one position.
 {¶ 50} On January 24, 2002, Det. Salyer showed the computer generated photospread to both Robert Kirkland and Adam Hurlburt, who were kept in separate rooms during the identification procedure. Det. Salyer read to Kirkland and Hurlburt the standardized instructions which state, among other things, that the perpetrator of the offense may or may not be pictured in the display. When Det. Salyer showed the photospread to Hurlburt, he was unable to identify his attacker. Kirkland, on the other hand, identified Defendant as the man who had attacked Hurlburt. When Det. Salyer asked him if he was certain of his identification, Kirkland responded affirmatively.
 {¶ 51} Subsequently, Hurlburt's mother telephoned Det. Salyer to inform him that Adam Hurlburt had seen the man who attacked him in the neighborhood. Det. Salyer then prepared a second photospread for Adam Hurlburt to view. Det. Salyer used the same photos that were in the first photospread, so that Defendant's photo would not be the only one to appear in two different photospreads. Salyer rearranged the photos in a different order, however, in case Kirkland and Hurlburt had conferred about which photo Kirkland previously selected. In the second photospread Defendant's photograph appears in the number five position. Before showing the second photospread to Hurlburt on March 21, 2002, Det. Salyer again read the standard instructions as he had done before. This time Hurlburt immediately identified Defendant as his attacker.
 {¶ 52} The six photos in the array all depict white males with short dark hair and some facial hair. Only the head and part of the torso of each subject is shown. The backgrounds are the same. While Defendant's photo is the only one which depicts a tattoo on the person's neck, there is no evidence that either Kirkland or Hurlburt had noticed any tattoo on the perpetrator during the assaults. We have previously recognized that the computerized system used by police to generate photospreads typically avoids unfairness to a suspect and almost any claim of suggestiveness.Beddow, supra.
 {¶ 53} Neither the photographs themselves, not the manner in which police presented them to Kirkland and Hurlburt, were impermissibly suggestive. Accordingly, no further inquiry concerning the reliability of the identifications is necessary. Beddow, supra.
 {¶ 54} The third assignment of error is overruled.
 {¶ 55} Fourth Assignment of Error
 {¶ 56} "Appellant's convictions are against the sufficiency and/or manifest weight of the evidence."
 {¶ 57} In this assignment of error Defendant challenges the sufficiency of the State's evidence to prove his identify as the perpetrator of this assault.
 {¶ 58} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 59} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 60} Robert Kirkland identified Defendant from a photospread as the man who had attacked his friend, Adam Hurlburt. The evidence also demonstrated that the assailant was driving a red hatchback vehicle. Dana Horstman, a friend of Defendant, testified at trial that Defendant sometimes drove a red hatchback that belonged to a friend. When police went to Defendant's residence, they discovered a red Honda Prelude hatchback.
 {¶ 61} During January 2002, at a carryout where Hurlburt's mother had posted a reward flyer, when Horstman raised the topic of the attack on Hurlburt after seeing the reward poster, Defendant admitted that he and Nick Weidner had caused Hurlburt's injuries. During each of the subsequent three or four times that Horstman asked Defendant about assaulting Hurlburt, Defendant warned Horstman not to talk to anyone else about what he and Weidner had done. Shortly after his admission to Horstman, Defendant left Dayton and moved to Kentucky, where he stayed until May 2003, despite being on probation in Montgomery County for a prior offense. The night before Horstman was scheduled to testify at Defendant's trial, Defendant called Horstman and for the first time said Luke Jaco had assaulted Hurlburt.
 {¶ 62} Viewing this evidence in a light most favorable to the State, a reasonable trier of facts could find beyond a reasonable doubt that Defendant was the perpetrator of the assault on Hurlburt.
 {¶ 63} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15562, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 64} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 65} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts, the jury here, to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson
(August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 66} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 67} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 68} In arguing that his conviction is against the manifest weight of the evidence, Defendant claims that Kirkland was unsure of his identification of Defendant from photographs, the victim was not able to identify Defendant from photographs until after seeing him again in the neighborhood subsequent to viewing the first photospreads, the conditions wee not optimal for viewing the assailant at the time of the assault, neither Kirkland nor Hurlburt provided a detailed description of the assailant, Defendant was only joking when he told Horstman that he committed the crime, and Defendant has consistently maintained his innocence.
 {¶ 69} The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to resolve. DeHass,supra. The jury in this case did not lost its way simply because it chose to believe the State's witnesses and disbelieve Defendant, which is was entitled to do. In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 70} The fourth assignment of error is overruled.
 {¶ 71} Fifth Assignment of Error
 {¶ 72} "The cumulative effect of the errors occurring at trial deprived appellant of a fair trial."
 {¶ 73} Defendant complains that the cumulative effect of the various errors occurring during trial deprived him of a fair trial. State v. DeMarco (1987), 31 Ohio St.3d 191. However, inasmuch as we have found that each of the errors occurring at trial were harmless beyond a reasonable doubt and did not contribute to Defendant's conviction, we find no cumulative prejudicial effect.
 {¶ 74} The fifth assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. and Young, J. concur.