The STATE of Ohio, Appellee,

v.

NEVINS, Appellant.

[Cite as *State v. Nevins,* 171 Ohio App.3d 97, 2007-Ohio-1511.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21379.

Decided March 30, 2007.

98

Jill R. Sink, Assistant Montgomery County Prosecuting Attorney, for appellee.

Jeffrey T. Gramza, for appellant.

WOLFF, Presiding Judge.

{¶ 1} Silas B. Nevins III was convicted of one count of felonious assault with a firearm specification after a jury trial in the Montgomery County Court of Common Pleas. The charges stemmed from the shooting of Cory Pettis at the corner of McCabe Avenue and Wexford Place in Dayton during the afternoon of April 29, 2005. Nevins was apparently seeking retribution for an attack on Wendell Carter that had occurred a short time earlier. Pettis was not involved in the attack on Carter, and he was returning from shopping for items for his daughter's birthday party when he was assaulted.

{¶ 2} A jury trial was held on October 25, 26, and 28, 2005, during which the state presented six witnesses. Pettis did not appear to testify. After a hearing, the court found that Pettis was unavailable under Evid.R. 804(A)(5), and it admitted, through another witness, Pettis's preliminary-hearing testimony and his identification of Nevins from a photo spread. At the conclusion of the trial,

the jury found Nevins guilty of felonious assault and the firearm specification. The court sentenced Nevins to eight years of incarceration for the felonious assault with an additional three years of actual incarceration for the firearm specification.

{¶ 3} Nevins appeals from his conviction, raising three assignments of error.

{¶ 4} I. "The trial court committed reversible error in its determination that witness Cory Pettis was unavailable to testify at trial."

{¶ 5} In his first assignment of error, Nevins claims that the trial court erred in ruling that Pettis was unavailable to testify at trial. He claims that as a result, the court erroneously allowed Pettis's preliminary-hearing testimony to be read into the record by Detective DeBorde.

{¶ 6} Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion and material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶ 7} A declarant must be unavailable to testify in order for the declarant's hearsay statements to be admissible. *Barber v. Page* (1968), 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255; *Ohio v. Roberts* (1980), 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597. Under Evid.R. 804(A)(5), a witness is unavailable if he "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means." "A witness is not considered unavailable unless the prosecution has made reasonable efforts in good faith to secure his presence at trial." *State v. Keairns* (1984), 9 Ohio St.3d 228, 230, 9 OBR 569, 460 N.E.2d 245; *Barber*, 390 U.S. at 724–725, 88 S.Ct. 1318, 20 L.Ed.2d 255. The burden of proving unavailability is on the state. *State v. Smith* (1979), 58 Ohio St.2d 344, 348, 12 O.O.3d 313, 390 N.E.2d 778; *Roberts*, 448 U.S. at 74–75, 100 S.Ct. 2531, 65 L.Ed.2d 597.

{¶ 8} Pettis testified at the preliminary hearing and was cooperative with the prosecutor's office prior to trial. However, immediately before trial was to begin, the prosecutor informed the court in chambers that he had not been able to contact Pettis. The prosecutor stated that Pettis and his wife, Dealiger Pettis ("Dealiger"), had been residentially served with a letter and subpoena and that they had come to the prosecutor's office as scheduled for the pretrial conference. Pettis had indicated at that time that he had been offered $1,500 not to testify but that he wished to go forward with the case. A couple of days later, the prosecutor had spoken with Dealiger and told her that he would arrange transportation for trial. The prosecutor had not been in contact with Pettis since,

and he stated that he sent detectives and two investigators from the prosecutor's office to look for Pettis. The prosecutor represented to the court that Detective Michael Galbraith had made contact with Dealiger and that she said that someone had come by and offered more money to Pettis not to testify. The prosecutor indicated that a material witness warrant and a continuance might be necessary if Pettis did not appear.

{¶ 9} The trial began on October 25, 2005, as scheduled. At 3:42 p.m. that day, the state called Dealiger to testify. Over defense counsel's objection, the state asked Dealiger whether Pettis had been subpoenaed, and she responded that he had. Dealiger testified that Pettis was gone when she woke up and that she had not seen him that morning. She further stated that she had been trying to call and find her husband all day but that she had not been able to find him. Over defense counsel's continued objections, Dealiger further stated that someone who had been watching the trial had stopped by her house a few days prior to the trial.

{¶ 10} The next day, the state called Detective Michael DeBorde to testify about his investigation of the assault. After defense counsel objected to De-Borde's testifying to Pettis's identification of Nevins in a photo spread, the court held a hearing on whether Pettis was an unavailable witness.

{¶ 11} At the unavailability hearing on October 26, 2005, Sherri Peterson, the docket secretary for the prosecutor's office, testified that on October 12, 2005, she sent Pettis and Dealiger a pretrial letter informing them of a pretrial conference on October 19, 2005, and that they were required to appear for trial at 9:00 a.m. on October 25, 2005. Peterson prepared subpoenas for Pettis and Dealiger, and she included a copy of the unfiled subpoenas in the pretrial letter. Peterson sent the letter to 630 Groveland Avenue, Dayton, Ohio, the Pettises' address. The subpoenas were then sent to the clerk of court's office to be filed and served. The court's docket confirmed that subpoenas for Pettis and Dealiger were filed and issued on October 12, 2005, and it indicated that Dealiger was served on October 17, 2005. The court took judicial notice that there was no return of service for Pettis.

{¶ 12} Regina Hankins, the victim advocate for this case, testified that she met with Pettis and Dealiger on October 19, 2005. During their meeting, Pettis and Dealiger stated to her that they had been subpoenaed.

{¶ 13} Detective Michael Galbraith testified that at approximately 9:00 a.m. on October 25, 2005, Detective Michael DeBorde asked him to attempt to locate Pettis. Galbraith and Detective Daryl Smith drove to Haber and McCabe and walked from there toward Pettis's apartment. As they were walking to the apartment, the detectives were "flagged down" by Dealiger. When the detectives asked her whether her husband was at the house, Dealiger responded that she

had not seen him since she had gotten up that morning, that she had no idea where he was, and that she was out looking for him, too. The officers returned to the Pettises' home with Dealiger. The detectives searched the kitchen and living room area of the home but did not go upstairs. Galbraith asked the Pettises' children, who were coming down the stairs, whether their father was home, and they responded that he was not. Dealiger told the detectives that she noticed that he was gone when she woke up and was concerned that he was not going to make it to the trial, so she looked at various apartments in the neighborhood where she thought he might be. Dealiger repeated that she had not been able to locate Pettis. Dealiger also mentioned that Pettis had been offered $2,000 to $3,000 not to testify. Galbraith gave Dealiger his business card and telephone number and asked her to call him if she had any contact with Pettis or if she learned where he might be located. Dealiger did not contact him. Galbraith testified that he searched for Pettis between 9:00 a.m. and 10:00 a.m.

{¶ 14} In addition to the above testimony, the trial court considered the testimony that Dealiger had given during the state's case-in-chief.

{¶ 15} At the conclusion of the hearing testimony, the state represented to the court that an investigator from the prosecutor's office had driven around with Dealiger in an attempt to locate Pettis, but the state was unable to reach him and get him to the court in time for the hearing. The trial court responded, "We're fine."

{¶ 16} Based on the evidence presented, the court concluded that Pettis had been subpoenaed, that he had made himself unavailable, and that the state had made reasonable efforts to locate him.

{¶ 17} On appeal, Nevins asserts that the court's finding that Pettis was unavailable was erroneous for three reasons. First, he argues that the state did not make a good-faith effort to secure Pettis's appearance at trial, because no subpoena was served. Second, he claims that the state failed to make reasonable efforts to locate him. Third, Nevins argues that the court improperly relied upon Dealiger's testimony during the state's case-in-chief because no motion for a determination of unavailability had been filed at the time of her testimony.

{¶ 18} Upon review, we conclude that the trial court did not abuse its discretion when it determined that Pettis was unavailable. Both Dealiger and Hankins testified that Pettis acknowledged that he had received the subpoena. Although the court's docket did not include a return of service of the subpoena, Dealiger's and Hankins's testimony reasonably established that he received it. Although it is possible that Pettis received only the prosecutor's courtesy copy of the unfiled subpoena, the evidence does not require that conclusion.

{¶ 19} Moreover, the trial court did not err in considering Dealiger's testimony that her husband received a subpoena in ruling on his unavailability. That testimony was offered under oath during the state's case-in-chief after the trial court ruled that an explanation for Pettis's absence was relevant. Although neither party had formally requested a hearing on Pettis's unavailability at that time, Nevins was aware that Pettis's absence and the existence of a subpoena had been placed at issue. Nevins had an opportunity to cross-examine her on that issue when she testified.

{¶ 20} Finally, the trial court reasonably concluded that the state made a reasonable, good faith effort to locate Pettis. The state sent a detective to Pettis's residence to locate him, and the detectives investigated whether he was there. The detectives were informed by Pettis's wife that she had checked several addresses in the neighborhood where she thought Pettis might be and that she could not find him. Detective Galbraith provided her information on how to contact him if she had other ideas of where to look or if she came into contact with him. Based on Galbraith's testimony, the trial court could have reasonably concluded that in the absence of any additional guidance on where to look, the officer's actions constituted a reasonable effort to locate Pettis.

{¶ 21} The first assignment of error is overruled.

{¶ 22} II. "The trial court committed reversible error in allowing a prior out-of-court statement by Corey Pettis to be admitted as evidence."

{¶ 23} In his second assignment of error, Nevins claims that the trial court erred in permitting Detective DeBorde to testify that Pettis had identified Nevins in a photo spread. The trial court found that the testimony was admissible under Evid.R. 801(D)(1)(c).

{¶ 24} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "Statement" includes an oral or written assertion and a person's nonverbal conduct if it is intended by him as an assertion. Evid.R. 801(A).

{¶ 25} Pettis identified Nevins from the photo array that DeBorde showed to him. DeBorde testified that Pettis placed his initials above photo number four, wrote the number four down in the bottom right corner of the photo array, and signed the photo array. DeBorde testified that Pettis "identified Mr. Nevins in that picture" and that Nevins was photo number four.

{¶ 26} By placing his initials above photo number four and writing that number below, Pettis made an out-of-court statement, which was then offered through DeBorde to establish that Nevins was Pettis's assailant. Although Pettis's identification was not made orally, DeBorde's testimony of Pettis's identification

is hearsay. As stated as an example in Binder, Hearsay Handbook (4th Ed.2001), Section 1:2:

{¶ 27} "[A] witness to a crime may be asked by the police to pick out the culprit from a lineup. The witness may say, 'The man on the left did it.' Or the witness may designate the man on the left on a written form. Or the witness may silently point to the man. In any one of these cases, the witness has made an assertion. If at trial a policeman relates what he observed the witness say or do at the lineup to identify the culprit, the testimony of the policeman is hearsay."

{¶ 28} Evid.R. 801(D)(1)(c), which concerns prior identifications by a witness, provides:

{¶ 29} "A statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."

{¶ 30} As the rule makes clear, "[i]dentification testimony is not admissible per Evid.R. 801(D)(1)(c) unless the person who made the out-of-court identification testifies at trial and is subject to cross-examination." *State v. White*, Montgomery App. No. 20324, 2005-Ohio-212, 2005 WL 120059, ¶ 42.

{¶ 31} In the present case, Pettis did not appear to testify at trial, and, consequently, he was not subject to cross-examination at trial on his selection of Nevins from the second photo array. Accordingly, Pettis's identification of Nevins did not fall within Evid.R. 801(D)(1)(c), and it was inadmissible.

{¶ 32} The state argues that Pettis's absence from the trial was not fatal to the admissibility of his prior identification for several reasons.

{¶ 33} First, the state argues that Pettis's prior identification was constitutionally admissible because Pettis testified about his photographic identification of Nevins and was cross-examined on that issue at the preliminary hearing. The state thus argues that Pettis's prior identification satisfies the Confrontation Clause of the Sixth Amendment to the United State Constitution.

{¶ 34} In *Roberts*, the United States Supreme Court held that hearsay testimony of an unavailable witness was admissible if it bore "sufficient indicia of reliability." 448 U.S. at 66, 100 S.Ct. 2531, 65 L.Ed.2d 597. In *Roberts*, the court found that the absent witness's preliminary-hearing testimony bore sufficient indicia of reliability because defense counsel had an adequate opportunity to cross-examine the witness at the preliminary hearing, counsel availed himself of that opportunity, and the transcript afforded the trier of fact sufficient basis for evaluating the truth of the witness's prior statement. Id. at 73, 100 S.Ct. 2531, 65 L.Ed.2d 597.

{¶ 35} In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the Supreme Court rejected the practice of allowing the use of an unavailable witness's out-of-court statement if it had sufficient indicia of reliability, reasoning that the practice violated the accused's right to confront the witnesses against him. *Crawford* held that a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. Id. at 59, 124 S.Ct. 1354, 158 L.Ed.2d 177. Thus, when the state wishes to offer the statements of an unavailable declarant, the pivotal questions are whether the hearsay statements in question are properly characterized as testimonial and, if so, whether the accused had a prior opportunity to cross-examine the witness.

{¶ 36} The Ohio Rules of Evidence require an additional layer of analysis. Because testimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa, see *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354, 158 L.Ed.2d 177, the declarant's statements must fall within the constitutional requirements *and* the rules of evidence to be admissible.

{¶ 37} The state correctly notes that Pettis was cross-examined at the preliminary hearing regarding his identification of his shooter. He testified that he was asked to identify the shooter by photographic line-up on two occasions. Pettis indicated that he gave a description of the shooter's face, of the weapon, and of the shooter's car to the police. Pettis did not identify anyone in the first photo line-up. Over the next two weeks, Pettis heard rumors about who may have been involved. The police prepared a second photo array. Pettis testified that was "able to pick someone" out of the second photo line-up immediately. During his preliminary-hearing testimony, Pettis did not identify Nevins as the person whom he had selected from the line-up.

{¶ 38} We agree with the state that Pettis's preliminary-hearing testimony was constitutionally admissible under *Crawford*. We likewise agree that Pettis's identification of Nevins during the photo line-up was admissible under the Confrontation Clause, because Pettis was unavailable, his statement to DeBorde was testimonial, and Nevins had an adequate opportunity to cross-examine Pettis at the preliminary hearing on the circumstances of his identification.

{¶ 39} However, although Pettis testified at the preliminary hearing that he selected "someone" from the photo line-up, Pettis did not, at that time, specifically identify Nevins as his shooter, either by reiterating his prior identification from the photo array or by identifying him at the hearing itself. Accordingly, DeBorde's testimony that Pettis identified Nevins from the photo array exceeded the scope of Pettis's preliminary-hearing testimony, and it was not admissible under Evid.R. 804(B)(1) as former testimony. The state cannot bootstrap

DeBorde's testimony that Pettis identified Nevins to Pettis's prior testimony describing the circumstances of his identification of his assailant but without making an identification.

{¶ 40} Second, the state claims that Pettis's statement to DeBorde was admissible as corroborative evidence under *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291, paragraph five of the syllabus. In *Lancaster*, the Supreme Court held: "Prior identification of the accused may be shown by the testimony of the identifier, or by the testimony of a third person to whom or in whose presence the identification was made, where the identifier has testified and is available for cross-examination, not as original, independent or substantive proof of the identity of the accused as the guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused." Id. The *Lancaster* rule has been modified by Evid.R. 801(D)(1)(c), which does not require the testifying witness to identify the accused at trial. *State v. Anderson* (Mar. 23, 1994), Montgomery App. No. 13003, 1994 WL 95228.

{¶ 41} In this case, although DeBorde's testimony corroborated Pettis's prior testimony regarding the photo arrays, it did not reiterate prior trial testimony by Pettis as to the identity of his assailant, because no prior testimony identifying Nevins existed. Contrast *In re Hart* (Mar. 8, 2002), Montgomery App. No. 18801, 2002 WL 360648. DeBorde's testimony that Pettis identified Nevins was the only evidence that Nevins was Pettis's assailant, and it was inadmissible under *Lancaster* and Evid.R. 801(D)(1)(c).

{¶ 42} Third, the state claims that a "reasonable view of the evidence indicates that [Pettis's] unavailability was due to wrongdoing on the part of Nevins." Under Evid.R. 804(B)(6), a statement by an unavailable witness is admissible against a party if "the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying." Evid.R. 804(B)(6) further provides: "However, a statement is not admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement."

{¶ 43} Although acknowledging that it did not "strictly comply with the rule's requirement to provide advance written notice," the state asserts that it gave sufficient notice to Nevins to provide him a fair opportunity to contest the admissibility of the photo identification. The state notes that Nevins knew of Pettis's unavailability on the first day of trial and that DeBorde did not testify until the second day of trial. Although Pettis's potential unavailability was raised during the first day of trial and there was evidence through the testimony of Galbraith and Dealiger that Pettis had been offered money not to testify, the

state failed to comply with the requirements of Evid.R. 804(B)(6). The state did not ask for a determination of Pettis's unavailability before DeBorde's testimony on Pettis's photo identification of Nevins, and the state argued that the identification was admissible under Evid.R. 801(D)(1)(c).

{¶ 44} Finally, we find that the admission of DeBorde's reiteration of Pettis's identification of Nevins was prejudicial. The identity of Pettis's assailant was a central issue in the case, and the only additional evidence that Nevins was the assailant was a weak inference that associated him with an "Ebony" whose boyfriend was identified by unknown persons when the shooting occurred.

{¶ 45} The second assignment of error is sustained.

{¶ 46} III. "The trial court committed reversible error in allowing testimony by corrections officer Jeffrey Vest on records of people who had visited defendant in jail."

{¶ 47} In his third assignment of error, Nevins claims that the trial court erred in permitting the testimony of Jeffrey Vest, a corrections officer with the Montgomery County Sheriff's Office who worked in the Jail Records Division. Vest testified that jail visitation records showed that Ebony Perkins visited Nevins at the Montgomery County Jail on several occasions. Nevins argues that Vest's testimony had minimal probative value and was highly prejudicial.

{¶ 48} During the state's case, Robin Garrett, a witness to the assault, testified that she was at a house on Groveland Avenue when the shooting occurred. She testified that there were several people around, including a crowd behind her. Garrett testified that she did not know who was "doing the shooting over there" until the crowd started to say his name. Garrett heard people in the crowd yell, "That's Pooh. That's Ebony baby Daddy." Garrett interpreted the statement to mean that Pooh was the boyfriend of a girl named Ebony. Garrett did not know Pooh, but indicated that she had a neighbor named Ebony Perkins. Vest subsequently testified that computerized jail visitation records revealed that Ebony Perkins visited Nevins in jail on several occasions. Nevins objected to Vest's testimony on the grounds that it prejudicially revealed that he was incarcerated and that it was irrelevant.

{¶ 49} Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence must be excluded under Evid. R. 403(A), however, "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "[D]espite the mandatory terms of Evid.R. 403(A), when considering evidence under that rule, the trial court is vested with broad discretion and an appellate court should not interfere

absent a clear abuse of that discretion." *State v. Harding,* Montgomery App. No. 20801, 2006-Ohio-481, 2006 WL 267323, at ¶ 21.

{¶ 50} Nevins asserts that Vest's evidence was highly prejudicial because it informed the jury that he was incarcerated prior to trial. We disagree. Dayton police officer Mark Ponichtera had previously testified, without objection, that he arrested Nevins at 1606 Bancroft Street. Vest's testimony merely relayed that Nevins received several visitors in jail after his arrest. As stated in *State v. Hamilton* (Apr. 18, 1985) Cuyahoga App. No. 48945, 1985 WL 7984: "Surely a jury is not naive and does realize the jail is a part of the criminal justice system. Visiting a defendant in jail is not in and of itself a prejudicial statement under these circumstances. The question posed by the prosecutor could have just as well evoked sympathy for the defendant." The fact that Nevins received several visits from Perkins after his arrest was not overly prejudicial, and the court did not err on this basis. We further disagree with Nevins that Vest's evidence was irrelevant. The inference that Nevins is Pooh based solely on Perkins's visits to Nevins in jail is not a strong one. However, we do not find that the evidence is irrelevant or created a danger that the jury would be misled or confused. The jury could evaluate for itself whether Vest's and Garrett's testimony supported an inference that Nevins is Pooh and, thus, the shooter. Accordingly, the trial court did not abuse its discretion when it permitted Vest's testimony.

{¶ 51} The third assignment of error is overruled.

{¶ 52} The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and WALTERS, JJ., concur.

Judge SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.