[Cite as *State v. Miller*, 2016-Ohio-4993.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    14CA010556 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOHANNON R. MILLER | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    13CR086882 |

DECISION AND JOURNAL ENTRY

Dated: July 18, 2016

SCHAFER, Judge.

{¶1}  Defendant-Appellant, Bohannon Miller, appeals the judgment of the Lorain County Court of Common Pleas convicting him of several offenses including aggravated murder and attempted murder, and sentencing him to a total prison term of 51 years to life.  For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2}  The Lorain County Grand Jury indicted Miller on a variety of offenses including aggravated murder in violation of R.C. 2903.01(A), an unspecified felony, and attempted murder in violation of R.C. 2903.02(A), 2923.02(A), a felony of the first degree, as well as several firearm specifications in violation of R.C. 2941.145, 2941.146.  The charges arose from a June 2009 incident that occurred at the corner of Long Avenue and 13th Street in Lorain, Ohio.  At approximately 10:00 p.m., a vehicle drove through the area and its occupants opened fire, shooting two individuals, C.R. and M.M.  C.R. sustained two non-fatal injuries after being shot

once in the leg and once in the side. However, M.M. sustained fatal gunshots to his chest and later died from his injuries. Police were already present in the area to investigate a separate murder and they quickly responded to the scene. They learned from witnesses that the suspect's vehicle was a gold or silver Taurus and that the shooter stood through the sunroof while shooting at C.R. and M.M.

{¶3} After learning this, police received a dispatch that someone had called to report suspicious activity at the intersection of 30th Street and Caroline Avenue, where four males were seen exiting a vehicle and wiping it down. Police responded to this location and found a gold Taurus that matched the witnesses' description of the shooter's vehicle. The Taurus's sunroof was open and police discovered a spent cartridge in the vehicle. BCI matched this cartridge to cartridges discovered at the scene of the shooting. Police also linked the gold Taurus to Miller and conducted a follow-up investigation.

{¶4} During the course of this subsequent investigation, Lorain Police Detective Ernest Sivert interviewed R.F. In his first interview, R.F. said that he was not present during the shooting and had no knowledge of the shooter's identity. However, in his second police interview, R.F. said that he was seated in the backseat of the Taurus at the time of the shooting. And, R.F. stated that Miller was one of the vehicle's other occupants and that Miller was the person who shot toward C.R. and M.M. R.F. was not entirely clear in his description of Miller's actions except that he stood and shot toward the victims out of the vehicle's passenger side. R.F. also confirmed that after the incident, all four of the vehicle's occupants wiped the vehicle down and left it at the intersection of 30th Street and Caroline Avenue. The State entered into an agreement with R.F. whereby he agreed to testify regarding Miller's actions during the June 2009 incident in exchange for immunity in the incident.

{¶5} The matter proceeded to a jury trial. During the pendency of the trial, R.F. indicated that he would not testify as required under the agreement. Subsequently the State filed a notice under Evid.R. 804(B)(6) that it intended to introduce evidence regarding R.F.'s out-of-court statements. The trial court conducted an evidentiary hearing outside the presence of the jury to address the issue. At the hearing, Detective Sivert testified that after the trial started, he met with R.F., who was in county jail along with Miller pending the resolution of their respective court cases. R.F. indicated that during one interaction over a glass partition at the jail, Miller held a document up to the glass and told him that he was the only person who could "sink" Miller. Miller also said the names of R.F.'s nieces, which R.F. interpreted as a threat. Detective Sivert authenticated two jail surveillance videos and testified that they confirmed that R.F. and Miller interacted over the glass partition. However, the video contained no audio of the interaction.

{¶6} According to Jail Administrator Andy Laubenthal, R.F. requested administrative segregation. The basis for R.F.'s request was that he was fearful for his life after receiving threats and experiencing several incidents of misbehavior directed toward him, including an incident in which another inmate threw urine into his jail cell. Administrator Laubenthal granted the request and R.F. was put into protective custody away from other inmates in the county jail.

{¶7} Chief Assistant Prosecutor Tony Cillo testified that he learned of R.F.'s decision to no longer cooperate and consequently discussed with him the ramifications of that decision for his plea agreement. During the course of that discussion, R.F. told Mr. Cillo that a prison gang attacked him several times in the jail because he would be "snitching" against Miller, one of the gang's associates. R.F. also repeated the threat that Miller made against his nieces over the glass partition and the fear that he had both for his own life and the lives of his family members.

{¶8}    The trial court called R.F. to testify at the hearing.  He relevantly testified as follows:

> The Court:    * * * [H]ave you been threatened regarding coming to court and testifying in this case?
>
> The Witness:  Yes.
>
> The Court:    Are you in fear because of these threats.
>
> The Witness: Yes.
>
> The Court:    You take the threats seriously?
>
> The Witness:  Right.  That's why I don't want to testify.
>
> * * *
>
> The Court:    * * * Have you been threatened by either Bohannon Miller or people who you believe have reason to believe are doing the work of Bohannon Miller, or doing, or making the threat on behalf of Bohannon Miller [?]
>
> The Witness:  Yes.

After hearing the testimony, the trial court found that the State met its burden to show that Miller engaged in wrongdoing by threatening R.F. for the purpose of making him unavailable to testify.

{¶9}    Detective Sivert subsequently testified during the trial to R.F.'s out-of-court statements regarding the shooting.  Additionally, the trial court admitted the recording of R.F.'s second police interview into evidence.[1]  The jury then found Miller guilty of all counts alleged in the indictment and the trial court sentenced him to a total prison term of 51 years to life.  Miller filed this timely appeal, which presents one assignment of error for our review.

---

[1] The trial court also admitted the video of the first police interview into evidence.

## II.

### Assignment of Error

**The trial court abused its discretion in admitting, over the objection of defense counsel, hearsay testimony in violation of the Sixth and Fourteenth Amendments to the United States Constitution.**

{¶10} In his sole assignment of error, Miller argues that the trial court erred by admitting evidence regarding R.F.'s out-of-court statements. Specifically, he argues that allowing the statements into evidence violated both Evid.R. 804(B)(6) and the Confrontation Clause. We disagree.

{¶11} Initially, we note that "[b]ecause testimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa, the declarant's statements must fall within the constitutional requirements *and* the rules of evidence to be admissible." (Emphasis sic.) *State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511, ¶ 36 (2d Dist.). As a result, we consider Miller's evidentiary and Confrontation Clause challenges to the admission of R.F.'s statements separately. *See State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 84, 103 (considering first whether challenged out-of-court statements were admissible under Evid.R. 804(B)(6) and second whether their introduction was consistent with the Confrontation Clause).

### A. Standard of Review for Hearsay

{¶12} "The decision to admit or exclude evidence at trial lies within the sound discretion of the trial judge, and the court's decision will not be reserved absent a showing of an abuse of discretion." *State v. Stover*, 9th Dist. Wayne No. 13CA0035, 2014-Ohio-2572, ¶ 7. An abuse of discretion is more than an error of judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219

(1983). When applying the abuse of discretion standard, we may not simply substitute our own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶13} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay statements are inadmissible except as otherwise provided in the Ohio Rules of Evidence or other relevant constitutional or statutory provision. Evid.R. 802. One such hearsay exception is found in Evid.R. 804(B)(6), the "forfeiture by wrongdoing" provision, which excepts the following from the hearsay rule: "A statement offered against a party if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying." To satisfy the rule's requirements, "the offering party must show (1) that the party engaged in wrongdoing that resulted in the witness's unavailability, and (2) that one purpose was to cause the witness to be unavailable at trial." *Hand* at ¶ 84; *see also State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 158. The proponent of the evidence must prove both of these prongs by a preponderance of the evidence. *Hand* at ¶ 87.

**B. The Admission of R.F. Statements Did Not Violate Evid.R. 804(B)(6)**

{¶14} Miller focuses his hearsay-based arguments on two points: (1) the trial court could not find that he engaged in wrongdoing unless the State offered evidence that he killed or seriously injured R.F.; and (2) the trial court should have rejected the State's request to admit the out-of-court statements because the evidence of his threats was "general" and "without any verification." We reject Miller's argument on both points.

{¶15} As to Miller's first point, a review of the staff notes to Evid.R. 804(B)(6) as well as Ohio case law reveals that the rule is intended to cover more situations than simply those that implicate the murder or serious assault of the declarant. The 2001 Staff Note to Evid.R.

804(B)(6) states that "the wrongdoing need not consist of a criminal act." It also provides that "[e]ncouraging a witness to leave the state is wrongdoing in this context because no person has the legal right to refuse to provide testimony in the absence of a privilege or other rule of evidence." *Id.* This commentary plainly contemplates that Evid.R. 804(B) covers a variety of wrongdoing beyond the murder or physical assault of the declarant.

{¶16} Miller correctly points out that, despite this commentary, the majority of Ohio cases applying Evid.R. 804(B)(6) relate to the defendant's wrongdoing in the form of murdering the declarant. But, there are instances in which Ohio courts have affirmed the admission of a declarant's statements after the defendant merely threatened the declarant and took no physical action. *See State v. Davis*, 6th Dist. Lucas No. L-14-1274, 2015-Ohio-5159, ¶ 18-20 (holding that testimony regarding unavailable declarant's statement was admissible where the defendant told declarant that "[e]verybody play their part, everybody going to be happy," which made the declarant fear for her life and her family's safety); *State v. Blackford*, 5th Dist. Stark No. 2014CA00050, 2014-Ohio-4808, ¶ 23 (holding that testimony regarding unavailable declarant's statements were admissible because jailhouse phone call recording showed the defendant's "numerous antics to get [the declarant] not to appear for trial but also to persuade [another witness] not to appear for trial"). This Ohio authority is consistent with the federal courts' application of the similar forfeiture-by-wrongdoing provision contained in Fed.R.Evid. 804(B)(6). *See United States v. Scott*, 284 F.3d 758, 764 (7th Cir.2002) ("We think that applying pressure on a potential witness not to testify, including by threats of harm or suggestions of future retribution, is wrongdoing."); *United States v. Dhinsa*, 243 F.3d 635, 651-652 (2d Cir.2001) ("[T]his Court, as well as a majority of our sister circuits, have also applied the waiver-by-misconduct rule in cases where the defendant has wrongfully procured the witnesses'

silence through threats, actual violence or murder."). In light of this authority, we must reject Miller's argument that evidence of mere threats is insufficient to support a trial court's finding that the defendant engaged in wrongdoing for the purpose of making a witness unavailable for trial.

{¶17} We likewise reject Miller's argument that the State offered unverified evidence to support its contention that Miller threatened R.F. The record reflects that the State did offer evidence that corroborated R.F.'s allegation that Miller threatened him over the trial. For instance, the State offered a surveillance recording that showed R.F. and Miller interacting at a glass partition in the county jail, which corroborates R.F.'s statements that Miller threatened him at the partition. And, R.F.'s fear for his own safety appears to have been genuine since he requested and received administrative segregation in the county jail after the glass partition incident. Most importantly, R.F. himself testified that he was threatened by either Miller or individuals acting on Miller's behalf.

{¶18} The trial judge heard R.F.'s testimony as well as all of the other evidence regarding the veracity of Miller's threats and their resulting effect on R.F. After hearing this evidence, the trial judge concluded that the State proved both prongs of the Evid.R. 804(B)(6) test. We must defer to the trial judge's credibility determinations and consideration of the weight of the evidence. *See State v. Mills*, 62 Ohio St.3d 357, 366 (1992) ("[T]he evaluation of evidence and the credibility of witnesses are issues for the trier of fact."). We can discern no basis in the record to conclude that the trial judge abused his discretion in deciding that R.F.'s version of events was credible and demonstrated wrongdoing on Miller's part for the purpose of preventing R.F. from testifying at trial. As a result, we conclude that the trial court did not abuse

its discretion in deciding that R.F.'s out-of-court statements were admissible under Evid.R. 804(B)(6).

### C. The Statements' Admission Did Not Violate the Confrontation Clause

{¶19} We review a trial court's admission of evidence over a Confrontation Clause objection de novo. *State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 20. The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. This right under the federal Constitution is applicable to the States via the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403 (1965). The import of this protection is that it "requires, wherever possible, testimony and cross-examination to occur at trial." *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 21. Although a criminal defendant's confrontation right is rooted deeply in history, *see Crawford v. Washington*, 541 U.S. 36, 43 (2004) ("The right to confront one's accusers is a concept that dates back to Roman times."), the right "is not absolute and 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant,'" *State v. Madrigal*, 87 Ohio St.3d 378, 385 (2000), quoting *Idaho v. Wright*, 497 U.S. 805, 813 (1990).

{¶20} The United States Supreme Court has held that the Confrontation Clause only bars the admission of "testimonial" hearsay statements. *Crawford* at 68. It has further declared that an out-of-court statement is testimonial when "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation [giving rise to the out-of-court statement] was to 'create an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S.Ct. 2173, 2180 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). Regardless, the Court has "explicitly preserved the principle that an accused has forfeited his confrontation right where the

accused's own misconduct is responsible for a witness's unavailability." *Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶ 105, citing *Crawford* at 62 ("The rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be alternative means of determining reliability.") *and Reynolds v. United States*, 98 U.S. 145, 158 (1879) (stating that if the witness is unavailable due to the defendant's misconduct then the defendant "is in no condition to assert that his constitutional rights have been violated").

{¶21} Here, the trial court based its preliminary determination that the out-of-court statements of R.F. were admissible on its finding that Miller threatened R.F. for the purpose of making him unavailable to testify at trial. As discussed above, we have determined that the trial court did not err in making that finding. As a result, we conclude that Miller forfeited his confrontation right by engaging in this wrongdoing and that the trial court did not err by admitting R.F.'s out-of-court statements into evidence. *See id.* at ¶ 106 (determining that there was no Confrontation Clause violation where the trial court found that the defendant killed the declarant "to eliminate him as a potential witness").

{¶22} In sum, the admission of R.F.'s out-of-court statements at trial violated neither Evid.R. 804(B)(6) nor Miller's confrontation right. Accordingly, we overrule Miller's sole assignment of error.

### III.

{¶23} Having overruled Miller's assignment of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

BRIAN J. DARLING, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.