[Cite as *State v. Mitchell*, 2012-Ohio-3722.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24797 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-2508 |
| v. | : | |
| | : | |
| LAURICE MITCHELL | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of August, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRISTOPHER W. THOMPSON, Atty. Reg. #0055879, 130 West Second Street, Suite 2050, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Laurice Mitchell appeals from his conviction and sentence on charges of

improperly discharging a firearm at or into a habitation, having a weapon while under disability, intimidating a crime victim, and a firearm specification.[1]

{¶ 2} Mitchell advances four assignments of error on appeal. First, he contends the trial court violated his Sixth Amendment confrontation right by declaring two prosecution witnesses unavailable and permitting use of their former testimony at trial. Second, he claims the trial court erred in admitting the two witnesses' former testimony where he lacked a meaningful opportunity and similar motive to test and develop that testimony. Third, he asserts that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal where the State presented insufficient evidence to prove venue and identification. Fourth, he argues that his trial counsel rendered constitutionally ineffective assistance.

{¶ 3} The present appeal stems from Mitchell's alleged involvement in events that occurred at the Northland Village apartment complex. On August 15, 2010, Shalita Williams argued with Aubrey Jenkins, the father of her four-year-old child, about child-care responsibilities. Appellant Mitchell, who was Jenkins's friend, interjected himself into the argument. At one point, Mitchell threatened to return with a gun to kill Williams. The police were called and when they arrived, Williams told them about Mitchell's threats and accused Mitchell of having a gun and selling drugs. Later the same night, Williams began receiving threatening text messages from a phone number she recognized as belonging to Mitchell. In the messages, he expressed anger about Williams telling police he had a gun and sold drugs. He used profanity and threatened to shoot her on sight.

---

[1] A jury also found Mitchell guilty of felonious assault and retaliation. For purposes of sentencing, these offenses were merged into those set forth above.

**{¶ 4}** The following morning, Williams was inside her apartment when she heard beating on the front door. According to Williams, she opened the door and saw Mitchell standing there. He proceeded to assault her. Mitchell then left, and Williams called the police. Mitchell's girlfriend and Williams's sister then appeared outside the apartment and began fighting. Police arrived while the fight was in progress and arrested both women.

**{¶ 5}** Following his girlfriend's arrest, Mitchell repeatedly called Williams and threatened to shoot her. Around noon that day, Williams and two friends were sitting in her living room when multiple gunshots came through the wall of the apartment. The women took cover and called the police, who arrived within one minute. Police were present in the apartment when Williams received a phone call from Mitchell's cell phone. During the call, which Williams played over a speaker, Mitchell referred to the shooting as "round one" and warned her that he was going to shoot at her every time he saw her.

**{¶ 6}** Police pin-pointed the location of Mitchell's cell phone to an area near Williams's apartment. Deputies in the area saw Mitchell driving a green Dodge Intrepid. They approached him in the parking lot of an adjoining apartment complex and ordered him out of his car. After unsuccessfully attempting to flee, Mitchell was placed under arrest. Police later watched a surveillance video that captured the shooting on tape. It showed a man matching Mitchell's physical appearance, and wearing clothes matching those he was wearing at the time of his arrest, fire several shots into Williams's apartment and run past two individuals standing outside. During their investigation, police located the two individuals who had witnessed the shooting. The witnesses, Kiera Veal and Marquasha Stewart, positively identified Mitchell as the shooter. Months later, Mitchell began calling Williams from jail

and threatening to kill her. On another occasion, Williams received a call from a third-party who offered her money not to testify.

{¶ 7} Following Mitchell's indictment, the trial court overruled a motion to suppress that challenged, inter alia, the eyewitness identification by Veal and Stewart. The case then proceeded to trial. Despite the issuance of subpoenas and material-witness warrants, Veal and Stewart refused to appear to testify. After holding a hearing on the matter, the trial court declared them unavailable and allowed the State to use as evidence a videotape of their testimony from the hearing on Mitchell's motion to suppress. The jury ultimately convicted Mitchell of all charges, and the trial court imposed an aggregate twenty-one-year prison term. This appeal followed.

{¶ 8} In his first assignment of error, Mitchell contends the trial court erred in declaring Veal and Stewart unavailable to testify at trial and allowing the State to present their suppression-hearing testimony to the jury. More specifically, he argues that the State failed to establish a reasonable, good-faith effort to locate the two women and to secure their attendance at trial.

{¶ 9} This court recently summarized the law governing the foregoing issue in *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335:

> The United States Supreme Court has held that testimonial, out-of-court statements are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct.

1354, 158 L.Ed.2d 177 (2004). Evid.R. 804(A), which addresses exceptions to the hearsay rule, defines unavailability as follows: "'Unavailability as a witness' includes any * * * situations in which the declarant: * * * (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

Evid.R. 804(B)(1) provides that, if the declarant is unavailable as a witness, the following are not excluded by the hearsay rule: "*Former testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. * * *"

In criminal cases, the State bears the burden to produce the declarant regarding hearsay made at a prior judicial hearing, or to establish that the declarant is unavailable to testify; the State must satisfy this burden in order to utilize hearsay made at the prior judicial proceeding. *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010-Ohio-745, ¶10, citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Confrontation Clause of the Sixth Amendment and Evid.R. 804(B)(1) normally require a showing by the State that the hearsay declarant is unavailable despite reasonable efforts made in good faith to secure his presence for trial. *Id.* at ¶ 11, citing *State v.*

*Keairns*, 9 Ohio St.3d 228, 460 N.E.2d 245 (1984). A showing of unavailability must be based on testimony of witnesses rather than hearsay; mere statements that a search has been made lack sufficient particularity to allow the court to determine what steps have been taken and whether they were reasonable. *Id.* at ¶ 11, ¶ 13.

Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion and material prejudice. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶50; *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶43.

*Jackson* at ¶ 48-51.

**{¶ 10}** With the foregoing standards in mind, we find no merit in Mitchell's challenge to the trial court's unavailability ruling. Notably, at the outset of the hearing below, which took place on the first day of trial, defense counsel clarified that his "only objection" to the State's use of Veal's and Stewart's suppression-hearing testimony was that he had not had the opportunity for meaningful cross examination. Defense counsel did not object on the basis that unavailability could not be established. (Tr. Vol. I at 227-228). Given defense counsel's failure to dispute unavailability below, Mitchell has waived all but plain error.

**{¶ 11}** But even if Mitchell had preserved the issue, we would find no abuse of discretion in the trial court's ruling. Despite defense counsel's lack of an objection, the State proceeded to present sworn testimony from detective Brad Daugherty regarding efforts taken to secure the two witnesses' appearance. Daugherty explained that Veal and Stewart

previously had appeared and testified in the suppression hearing once material-witness warrants were issued. (*Id*. at 228-229). Daugherty testified that he then spoke to Veal on the phone a few days before trial and advised her that she needed to appear. When Veal replied that she could not come on the first day, Daugherty told her that she probably could testify on the second day. Daugherty also gave Veal the prosecutor's phone number. (*Id*. at 229).

{¶ 12} Daugherty further testified that he had visited the separate residences of Veal's parents on multiple occasions. Each time, he was told that Veal did not live there but that he would be called if they heard from her. (*Id*. at 229-230). Veal previously had given police her mother's address as her own, but Daugherty never found her there. (*Id*. at 230). Despite the issuance of subpoenas, he failed to make contact with her. (*Id*.). Finally, Daugherty testified that a deputy was in the process of attempting to serve Veal with a material-witness warrant to compel her appearance at trial. To Daugherty's knowledge, however, Veal had not been located. (*Id*.).

{¶ 13} With regard to Stewart, Daugherty testified that he had not had any recent contact with her. Shortly before trial, he had gone to her last known address to attempt to serve a material-witness warrant, but he received no answer. (*Id*.). Daugherty also contacted the office at the apartment complex where Stewart was believed to live. (*Id*. at 231). Upon being told that she had not turned in her keys or given notice that she was vacating, Daugherty sent deputies to the apartment. (*Id*. at 231). They spoke to neighbors who reported that they had not seen Stewart for days and did not know where she could be found. (*Id*.). While attempting to serve a material-witness warrant for trial, deputies obtained a key and entered the apartment. They found some items inside, but it appeared as if Stewart might have

vacated. (*Id.*). Stewart subsequently called the police from a blocked phone number and told them to "leave [her] alone." (*Id.*). On cross examination, Daugherty testified that he had been trying to make contact with Veal and Stewart for at least a month. (*Id.* at 232). Daugherty added that he had no working phone number for Stewart and that neither woman was employed. (*Id.* at 233).

**{¶ 14}** After hearing Daugherty's testimony, the trial court found that the State had established unavailability. While Mitchell insists more could have been done to locate Veal and Stewart, the test is whether the State made reasonable, good-faith efforts to secure their appearance, not whether it took every conceivable step. *Keairns*, 9 Ohio St.3d at 248, 460 N.E.2d 245; *Hardy v. Cross*, 132 S.Ct. 490, 495, 181 L.Ed. 468 (2011) ("[W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, * * * but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising.").

**{¶ 15}** Before the trial court declared the two women unavailable, subpoenas and material-witness warrants had been issued to compel their appearance. In addition, Detective Daugherty visited known addresses on multiple occasions, spoke to Veal on the phone, contacted Stewart's neighbors, and had deputies enter her apartment. Daugherty could not contact employers because neither woman worked. He also had no current phone number for Stewart. After trying for more than a month, he failed to make direct contact with either woman and did not know their whereabouts. In light of these facts, the trial court did not err in finding the existence of reasonable, good-faith efforts to secure their appearance.

**{¶ 16}** Mitchell's reliance on *State v. Smith*, 2d Dist. Montgomery No. 22926,

2010-Ohio-745, fails to persuade us otherwise. In *Smith*, a detective had spoken to the witness, Cassie Davis, at her apartment shortly before trial. She indicated that she would not appear despite the issuance of a subpoena. The witness also told police she would hide if a warrant were issued. When the witness failed to appear for trial, police went to her apartment and knocked on her door. She did not answer. Police then spoke to the witness's sister, who advised them that the witness in fact was home. *Id.* at ¶ 19-21. On review, this court reasoned:

> We agree with Smith that the State failed to demonstrate that it had exerted reasonable efforts to secure Cassie Davis' appearance for trial. The State knew as early as the Friday before trial that the sole witness who could convict the defendant had received a subpoena and had no intention to appear for trial. The State was informed by Ms. Davis' sister that Ms. Davis intended to hide in her apartment and refuse to answer the door if requested to come to court. The trial court permitted the State to introduce the witness' former testimony even before efforts to bring her to court under a material witness warrant had been attempted. Surely, the defendant's constitutional right to confront his accuser requires something more than the efforts that were used to secure Ms. Davis' appearance than was demonstrated by the State of Ohio.

*Id.* at ¶ 24.

{¶ 17} Unlike *Smith*, police in this case did not simply serve a subpoena, wait until Veal and Stewart failed to appear, knock on their door, and then give up. As set forth above, the two women were subpoenaed, warrants were issued, and Detective Daugherty actively sought them out, describing the specific actions he took. Other deputies also assisted by

searching Stewart's apartment and speaking to neighbors. We are satisfied that the facts before us are sufficiently distinguishable from *Smith* to support a different result. The first assignment of error is overruled.

{¶ 18} In his second assignment of error, Mitchell claims the trial court erred in admitting Veal's and Stewart's former testimony where he lacked a meaningful opportunity and similar motive for cross examination.

{¶ 19} Although Mitchell raises his argument under the Sixth Amendment, the actual test he applies is found in Evid.R. 804(B)(1).[2] The rule provides that "former testimony" is not excluded under the hearsay rule if the declarant is unavailable and the testimony was "given as a witness at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

{¶ 20} Having reviewed the suppression-hearing transcript, we believe Mitchell had a similar motive for developing the women's testimony at the suppression hearing and at trial, namely to challenge their eyewitness identification of him as the perpetrator—the only real issue in the case. *Compare State v. White*, 2d Dist. Montgomery No. 20324, 2005-Ohio-212, ¶ 26 ("With respect to the admission at trial of Hurlburt's former testimony at the suppression hearing pursuant to Evid.R. 804(B)(1), we conclude that Defendant had a similar 'motive' for developing Hurlburt's testimony at the suppression hearing as would exist at trial, which was

---

[2]In any event, the Sixth Amendment's Confrontation Clause has been interpreted as containing a similar requirement for meaningful cross examination. *See, e.g.*, *State v. Mills*, 2d Dist. Montgomery No. 21146, 2005-Ohio-2128, ¶ 26 ("It is the opportunity to meaningfully test and develop by direct and cross-examination the witness' testimony at the prior proceeding where the witness is under oath that provides the indicia of trustworthiness and reliability that satisfies the confrontation clause.").

to question the reliability of Hurlburt's identification of Defendant as his attacker, as the identity of the perpetrator was the central issue in this case."). "An identical motive to develop testimony is not required by Evid.R. 804(B)(1), only a similar motive." *Id.*

{¶ 21} Mitchell also contends he lacked a meaningful opportunity for cross examination at the suppression hearing. Specifically, he suggests that his attorney lacked not just the motive, but also the opportunity to delve into what Veal and Stewart saw because the hearing was limited to the suggestiveness of the photo-spread. We disagree.

{¶ 22} Veal and Stewart did not testify about the suggestiveness of the photo-spread itself. They did provide some testimony, however, about the identification procedure. But they also testified about other things, including (1) the fact that they knew Mitchell before the shooting incident, (2) where they were at the time of the shooting, and (3) what they saw Mitchell do. On cross examination, defense counsel questioned the witnesses regarding their prior knowledge of Mitchell and their ability to observe the incident. If defense counsel had other questions to ask about what they saw or the reliability of their identification, he could have asked them. On appeal, Mitchell has not identified anything in particular that he believes a "meaningful" cross examination would have covered that was not asked by his attorney at the suppression hearing. Although defense counsel's questioning was not lengthy, we are persuaded that a meaningful opportunity for cross examination existed.

{¶ 23} Finally, even if the trial court had erred in allowing the State to use Veal's and Stewart's suppression-hearing testimony at trial, we would find the error to be harmless beyond a reasonable doubt. This is so because the evidence of Mitchell's guilt was overwhelming. The day after Mitchell sent Shalita Williams threatening messages, he

appeared at her door and assaulted her. He then began calling her and threatening to shoot her. Within hours, shots were fired into her apartment. With police still at the scene, Mitchell called Williams and threatened to shoot at her again. A surveillance video showed a man matching Mitchell's physical description and clothing firing shots into Williams's apartment. While incarcerated, Mitchell called Williams from jail, threatening once again to kill her. Even setting aside the identification testimony from Veal and Stewart, the foregoing evidence overwhelmingly points to Mitchell's guilt. Thus, any possible error in the trial court's admission of the suppression-hearing testimony was harmless. *Compare White* at ¶ 32. The second assignment of error is overruled.

{¶ 24} In his third assignment of error, Mitchell contends the trial court erred in denying his Crim.R. 29 motion for acquittal on the charges of retaliation and intimidation of a crime victim. These charges were based on telephone calls the victim, Shalita Williams, received after Mitchell's arrest.

{¶ 25} On appeal, Mitchell asserts that the State failed to prove identity because Williams never identified his voice on the calls. He further claims the State failed to establish venue by proving that the calls were made from the Montgomery County jail.

{¶ 26} "When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt." *State v. Haggerty*, 2d Dist. Montgomery No. 24405, 2011-Ohio-6705, ¶ 19. "A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented

adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *Id.* at ¶ 20.

**{¶ 27}** Viewing the evidence in the light most favorable to the prosecution, the record supports reasonable inferences that Mitchell made the calls. Although Williams did not identify him by name when testifying about the calls, her testimony left no doubt that Mitchell was the "he" to whom she was referring. Indeed, the context of her testimony supports no reasonable inference other than that Mitchell was the caller. (Tr. Vol. I at 148-149). According to Williams, the calls continued until she reported them. (*Id.* at 149). Detective Daugherty acknowledged receiving such a complaint from Williams about Mitchell making threatening calls. (*Id.* at 318). Therefore, the State presented legally sufficient evidence to establish the identity of the caller.

**{¶ 28}** We reach the same conclusion regarding venue. Williams testified that the calls were coming from "the jail." (*Id.* at 148). Moreover, detective Daugherty, a Montgomery County sheriff's deputy, testified about obtaining phone records from "our jail" and "the County Jail." (*Id.* at 318-320). He identified 83 phone calls from "the jail" to Williams's cell phone. (*Id.* at 324). This testimony was legally sufficient to establish venue in Montgomery County. Accordingly, the third assignment of error is overruled.

**{¶ 29}** In his fourth assignment of error, Mitchell alleges that he received constitutionally ineffective assistance of counsel at trial. To prevail on this claim, he must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's

deficient performance, the outcome would have been different." *Id.* at 694.

**{¶ 30}** Mitchell first argues that his attorney provided deficient performance by failing to conduct a "vigorous cross examination" of Veal and Stewart, the eyewitnesses whose suppression-hearing testimony was used at trial. According to Mitchell, the two women should have been cross examined "about their perceptions of the event and their reliability."

**{¶ 31}** Having reviewed the suppression-hearing transcript, however, we note that both women were cross examined. On direct examination, Veal and Stewart testified that they knew Mitchell before the shooting incident. They also testified about picking him out of a photo-spread and about being sure he was the shooter. On cross examination, defense counsel inquired into the witnesses' prior knowledge of Mitchell and their ability to observe the shooting incident. Defense counsel also asked questions to determine whether the women had been coached or influenced prior to identifying Mitchell's picture.

**{¶ 32}** On appeal, Mitchell fails to identify anything in particular that defense counsel should have asked to make the cross examination sufficiently "vigorous." Based on our review of the testimony, we fail to see any deficient representation in defense counsel's questioning.

**{¶ 33}** Mitchell next alleges deficient representation based on his attorney's failure to object to hearsay testimony from detective Jeff Papanak. At trial, Papanak testified that he responded to the shooting scene within about one minute. Upon arriving, he spoke to three or four females who identified "Slim" as the shooter. (Trial Tr. Vol. I at 212-213). Papanak later determined that "Slim" was defendant Mitchell. (*Id.*).

**{¶ 34}** Although Mitchell contends Papanak's testimony about being told "Slim" was

the shooter was hearsay, defense counsel reasonably could have declined to object on the basis of Evid.R. 801(D)(1)(c). The females to whom Papanak spoke included Kiera Veal, Marquasha Stewart, Shalita Williams, and Lashana Crawford. (*See, e.g,* Tr. Vol. I at 145). Papanak's testimony that these women identified "Slim" as the shooter at least arguably met the requirements for admissibility under Evid.R. 801(D)(1)(c). The rule provides that a statement is not hearsay if "the declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification."

{¶ 35} Here Veal and Stewart testified at a pretrial suppression hearing and identified Mitchell, who they knew as "Slim," as the person they saw shooting a gun at Williams's apartment. (Suppression Tr. at 9-11, 18-19). During the hearing, Veal also reaffirmed the content of a police statement she had provided at the scene. In it, Veal stated that she saw "Slim" run up to a gate, pull out a gun, and start firing. (*Id*. at 11-12). The two women were subject to cross examination about their identification, their statements about "Slim" were ones of identification, and the trial court found the statements sufficiently reliable to allow a video of the suppression hearing to be played as evidence at trial. For purposes of Evid.R. 801(D)(1)(c), it matters not that Veal and Stewart were unavailable to testify at trial. "[A] prior identification that is found reliable by a trial judge falls outside the hearsay rule if it is shown that the [victim], *either at trial or a hearing*, had been or is subject to cross-examination under oath concerning the identification statement and the [victim] responds willingly to questions about the previous identification. If these conditions are met

and the judge finds the statement of prior identification reliable, then the statement of the declarant can be admitted at trial through a third person to whom or in whose presence the identification was made." *State v. Boston*, 46 Ohio St.3d 108, 124, 545 N.E.2d 1220 (1989) (Emphasis added.)[3] Finally, we note that the other two women, Williams and Crawford, actually testified at trial and identified Mitchell as the shooter. *(See, e.g.*, Tr. Vol. I at 146, 177-178, 182).[4] They were subject to cross examination, their identifications were made soon after the event, and the circumstances demonstrated reliability insofar as they knew Mitchell beforehand.

{¶ 36} Based on the foregoing analysis, we do not find that defense counsel provided deficient representation by failing to lodge a hearsay objection to Papanak's testimony that the witnesses told him that "Slim" (Mitchell) was the shooter. But even assuming, arguendo, that defense counsel should have objected, the failure to do so constituted harmless error beyond a reasonable doubt. As we noted in our analysis of the second assignment of error above, the evidence of Mitchell's guilt, and his identity by the nickname "Slim," was overwhelming.

{¶ 37} Mitchell also claims deficient representation based on defense counsel's failure to object to (1) shoe-print testimony from deputy Patrick O'Connell, an evidence technician and (2) the prosecutor's argument about a "matching" print.

---

[3]In *Boston*, the Ohio Supreme Court reasoned that "admitting a child's out-of-court identification of the perpetrator under Evid.R. 801(D)(1)(c), *without the child's testimony at trial*, requires the trial judge to conduct a voir dire examination of the child at which the child, under oath, is subject to cross-examination concerning her identification and responds willingly to questions about her identification." *(Emphasis added.) Boston* at 124. Similarly, although Veal and Stewart did not testify at trial, they did testify under oath, and subject to cross examination, at a pretrial suppression hearing where they answered questions concerning their identification of Mitchell.

[4]Although Williams and Crawford were inside the apartment and did not see the shooter, they both provided testimony that circumstantially identified Mitchell as the gunman.

**{¶ 38}** At trial, O'Connell testified that he found a couple of "fresh" prints in dirt outside the victim's apartment. He took pictures of the prints as well as pictures of the bottom of Mitchell's shoe. In closing argument, the prosecutor claimed the print in the dirt matched the pattern on Mitchell's shoe. On appeal, Mitchell contends O'Connell's testimony about the print found in the dirt was objectionable because he was not an expert in shoe prints. Mitchell further contends the prosecutor's closing argument was objectionable because the assertion about the print in the dirt matching Mitchell's shoe tread was a mischaracterization.

**{¶ 39}** Upon review, we find nothing objectionable in the disputed testimony. O'Connell admitted that he was not a shoe-print expert and that he could not tell the age of the print in the dirt. (*Id*. at 293, 295). He explained that the print he photographed appeared to be "fresh" insofar as it was well-defined and did not appear to be covered with dust or lose dirt. (*Id*.). In our view, any potential weaknesses in O'Connell's testimony went to its weight rather than its admissibility. We also see nothing objectionable about the prosecutor's statement, in closing argument, that the tread pattern on Mitchell's shoe "matched" the print found in the dirt. (*Id*. at 357). The claim constituted permissible argument with which the jury was free to agree or disagree based on its own interpretation of the evidence.

**{¶ 40}** Finally, Mitchell claims deficient representation based on defense counsel's concession that Veal and Stewart were unavailable to testify at trial. As noted above, defense counsel objected to the State's use of the two witnesses' suppression-hearing testimony only on the basis that he lacked an opportunity for meaningful cross examination. Defense counsel did not claim unavailability could not be established. Defense counsel's failure to challenge the witnesses' unavailability necessarily did not constitute deficient representation, however,

in light of our conclusion above that the trial court correctly declared them unavailable. Failure to raise a meritless argument will not support an ineffective-assistance claim. *State v. Gilliam*, 2d Dist. Montgomery No. 17491, 1999 WL812335 (Sept. 30, 1999). Absent deficient performance by his attorney, Mitchell cannot prevail on his ineffective-assistance claim. Accordingly, his fourth assignment of error is overruled.

{¶ 41}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Christopher W. Thompson
Hon. Barbara P. Gorman