[Cite as *State v. Jones*, 2018-Ohio-1130.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.  C-160826
                                                   TRIAL NO.  B-1405713
       Plaintiff-Appellee,              :
                                                   *O P I N I O N.*
   vs.                                  :

AARON JONES,                            :

       Defendant-Appellant.             :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 28, 2018


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1}     An armed individual robbed a Sunoco store at the corner of Salem Road and Sutton Avenue in Anderson Township.  He took money from the cash register and a carton of cigarettes.  The gunman fled from the store, running north up Sutton Avenue.  The employee, Dilbag Dilbag, testified that the gunman was five feet five inches tall, but also testified that he had stood on a platform behind the counter, so he did not know exactly how tall the gunman was.  A deputy later measured the platform and determined that it was six inches high.  Dilbag's testimony, and security footage from the store, demonstrated that the gunman had been wearing a white and blue hoodie, dark pants, and something red covering his face.  A police dog that was brought to the scene was able to pick up the trail of the gunman, which stopped at a fence behind a nearby apartment complex.

{¶2}     After conducting the initial investigation, detectives created a wanted flyer using an image captured from the security camera.  They subsequently received a Crime Stoppers tip that led them to a Subway restaurant in Mt. Washington.  When the detectives arrived, they were greeted by Jennifer Hensley, the manager, who told them that she was the one who had called.  She indicated that a man fitting the description had been in her store earlier on the day of the robbery.  Surveillance video from the Subway revealed an individual wearing the same clothing as the gunman.  The individual was seen passing the store several times, then talking to an employee.  After talking to the employee, detectives were directed to the apartment of Derek Lastoria.

{¶3}     Derek Lastoria lived in an apartment complex a short distance from the location where the dog had lost the gunman's scent on Sutton Avenue.  On the night of the robbery, he had seen Jones sitting on the front steps of his apartment

2

building with Lastoria's sister, Brittany Lovell. Lovell and Jones were arguing, with Jones accusing Lovell of taking a "fist full of 20s" from a grocery bag. Jones had told Lastoria that he had "hit a lick," admitting that he had just robbed the Sunoco. Jones also told Lastoria that he had gotten money and cigarettes, and showed him the gun he had used.

{¶4} The next day, Lovell called the police. When detectives arrived, she showed them the cigarettes and empty carton that Jones had taken from the store. They also found a sweatshirt behind the apartment building that matched the one worn by the gunman.

{¶5} Jones turned himself in to detectives three days after the robbery. Detectives showed him a picture captured from the Subway video, and Jones admitted that he was the one in the picture. He was arrested and subsequently indicted on one count of aggravated robbery with specifications, one count of robbery with specifications, and one count of having a weapon while under a disability. After his original jury trial resulted in a hung jury, Jones was found guilty of all three counts at the conclusion of a second trial. The trial court merged the robbery count with the aggravated-robbery count, and sentenced him accordingly. In six assignments of error, Jones now appeals.

## Unavailability of Witnesses

{¶6} Two witnesses who testified at Jones's first trial did not testify at his second. The first witness was Dilbag, who had moved to New York. The second witness was Lovell, whom detectives were unable to find. The trial court found that both witnesses were unavailable, despite reasonable efforts having been made to secure their appearances. As a result, the trial court allowed the testimony of Dilbag and Lovell from the first trial to be read to the jury in the second trial. In his first

assignment of error, Jones argues that the trial court abused its discretion by finding that the witnesses were unavailable.

{¶7} With regard to Dilbag, Jones argues that the state did not show that it had used reasonable efforts because it failed to issue an out-of-state subpoena pursuant to R.C. 2939.26. This argument was not raised below. Since Jones failed to raise this argument below, he has waived all but plain error. *See State v. Mitchell*, 2d Dist. Montgomery No. 24797, 2012-Ohio-3722, ¶ 10. To establish plain error pursuant to Crim.R. 52(B), Jones must show "(1) that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial." *State v. Bandy*, 1st Dist. Hamilton No. C-160402, 2017-Ohio-5593, ¶ 70. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶8} A trial court may find a witness unavailable without the state having first gone through the extensive procedure outlined in R.C. 2939.26 when the witness had appeared to be otherwise willing to cooperate. "The Act is not something which must be used in every situation; it is a remedy which may be used when the situation calls for it. When a witness appears very willing to cooperate, it is not reasonable to expect the prosecution to expend the time and energy to set the wheels of the Act in motion." *State v. Young*, 20 Ohio App.3d 269, 272, 485 N.E.2d 814 (8th Dist.1984); *see State v. Tolbert*, 1st Dist. Hamilton No. C-980622, 1999 WL 283891 (May 7, 1999).

{¶9} There was nothing in Dilbag's interaction with law enforcement up until the eve of trial that would have put the state on notice that use of the statute's procedure would have been required. Detective Shawn Cox from the Hamilton

County Sheriff's Office testified that he had told Dilbag that he would need to testify at the second trial, and Dilbag indicated that he would do so if he could. He had told the detective that he would need to be compensated for the lost time at work, information Cox said he passed on to the prosecutor. Cox said that he was not able to serve a subpoena on Dilbag because his department could not pay to send him to New York City. While Cox had been in relatively consistent contact with Dilbag since the first trial, the communications dropped off about one week before the second trial was to begin. Calls to Dilbag the week before the trial went straight to voicemail. Cox said that, at that point, Dilbag was "refusing to, in my opinion, come back and refusing to even take my calls at this point."

{¶10} In light of the fact that Cox did not have reason to suspect that Dilbag would not be cooperative until days before the trial started, the state need not have resorted to the procedures outlined in R.C. 2939.26 to satisfy the requirement that it had used reasonable efforts to secure Dilbag's appearance. Therefore, it was not plain error for the trial court not to have sua sponte considered the state's failure to utilize the procedure.

{¶11} On the issue of Lovell's unavailability, Jones argues that the state's failure to issue a subpoena to her mother's house was the reason that the state's efforts were not reasonable. But there is no indication that this would have been effective. Cox testified that Lovell had been evicted from her apartment and was believed to be homeless. Cox had attempted to contact Lovell through social media and three different cell phone numbers without success. Cox stayed in contact with Lovell's mother, who did not know where she was and was unable to contact her. Lovell's mother had hoped to find her by attending a court hearing that Lovell had scheduled in an unrelated matter, but Lovell did not appear at that hearing. There is

no indication in the record that issuing a subpoena to Lovell at her mother's address would have been effective in securing her appearance. The trial court did not abuse its discretion when it found her to be unavailable and allowed the state to read her prior testimony to the jury. We overrule Jones's first assignment of error.

**Prosecutorial Misconduct**

{¶12} In the second assignment of error, Jones claims that an analogy to solving a puzzle the state used when trying to explain reasonable doubt to the jury during voir dire amounted to prosecutorial misconduct. The test for whether prosecutorial misconduct mandates reversal is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). Since counsel did not object to the state's use of the analogy, Jones is precluded from predicating error on it unless the trial court's failure to intercede amounted to plain error. *See State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990); Crim.R. 52. Prosecutorial misconduct rises to the level of plain error only if it is clear the defendant would not have been convicted in the absence of the improper comments. *State v. Smith*, 2017-Ohio-8558, ____ N.E.3d ____, ¶ 49 (1st Dist.).

{¶13} Here, the prosecutor posed the example of having a 500-piece jigsaw puzzle without knowing what it pictured before assembling it. The prosecutor asked a prospective juror if the puzzle was an image of the Statue of Liberty, and the juror had about 20 percent of the puzzle complete, would the prospective juror know that it was the Statue of Liberty. The prospective juror replied in the affirmative. The prosecutor then continued by then talking about a puzzle that depicted the prosecutor, noting that the juror did not know her and that "[y]ou'd probably need 90% of it." The prosecutor said that "that example is what I like to use for reasonable

doubt, because there is no percentage that we can put on reasonable doubt.  I wish I could but we can't.  Sometimes you need 20% or 40%, sometimes you need 90% of it, and it's okay."  The prosecutor concluded by noting that "it's not absolute certainty," telling the prospective juror that "[t]he judge will instruct you that it's not absolute certainty," and asking the prospective juror not to hold her to the standard of absolute certainty.

{¶14}  Generally, "attempts to 'clarify' the term by example, analogy, metaphor, or simile are ill-advised." *State v. Turic*, 2d Dist. Greene No. 2010 CA 35, 2011-Ohio-3869, ¶ 13.  But as the Ohio Supreme Court stated when confronted with a different analogy, "While the prosecutor's comments were perhaps inappropriate, we do not find that the comments denigrated the reasonable doubt standard.  Moreover, the trial court's 'reasonable-doubt instructions negated any misconception by the jury.' " *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 78, quoting *State v. Lundgren*, 73 Ohio St.3d 474, 484, 653 N.E.2d 304 (1995).  Even the *Turic* court, which cautioned against the use of analogies to further explain reasonable doubt, found that the defendant had shown no prejudice because "the trial court instructed the jury that the court would set forth the law to be applied to the case, and it correctly defined reasonable doubt shortly after voir dire and in the concluding jury instructions." *Turic* at ¶ 14.

{¶15}  In this case, the jury was given the proper definition of reasonable doubt in the jury instructions.  In light of this proper instruction, the state's use of analogy—while ill-advised—did not denigrate the reasonable-doubt standard. And the comments did not rise to the level where it is clear that Jones would not have been convicted in their absence.  The trial court's failure to admonish the state or

strike the reference to the puzzle analogy sua sponte did not amount to plain error. We overrule Jones's second assignment of error.

### Ineffective Assistance

{¶16}   In his third assignment of error, Jones argues that his trial counsel was ineffective.  To prevail on an ineffective-assistance-of-counsel claim, Jones must show trial counsel's performance fell below an objective standard of reasonableness and he was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 687–688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to demonstrate prejudice, Jones must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different.  *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6.  The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697.

{¶17}   Jones first argues that counsel was ineffective for failing to offer to stipulate to his prior conviction for aggravated robbery that constituted an element of the weapons-under-disability count of the indictment.  For that proposition, he relies heavily on *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8840, 84 N.E.3d 981.  In that case, the court followed the United States Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), and held that the trial court abused its discretion by not allowing the defendant to stipulate to the fact of a prior conviction when that prior conviction constituted an element of a weapons-under-disability charge.

{¶18}   Two weeks before *Creech* was released, however, the Ohio Supreme Court addressed the issue of whether counsel can be ineffective for failing to offer to stipulate to a prior conviction in *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-

8126, 89 N.E.3d 554. The *Spaulding* court held that the failure to offer to stipulate to the prior conviction did not constitute actionable ineffective assistance because the defendant had failed to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ¶ 153, quoting *Strickland* at 694.

{¶19} The record before us is replete with evidence that Jones committed the crime. Had counsel stipulated to Jones's prior conviction, the outcome would not have been different. Pursuant to *Spaulding*, even if the failure to stipulate fell below the minimum level of representation to which Jones was entitled, we will not reverse his conviction on that basis because he has not shown that he was prejudiced.

{¶20} Jones also claims that counsel was ineffective for failing to object to the puzzle analogy used by the state during voir dire. But, as we have previously determined, the state's use of the analogy neither denigrated the reasonable-doubt standard nor changed the outcome of the trial. We overrule Jones's third assignment of error.

### Hearsay Evidence: *State v. Ricks*

{¶21} In his fourth assignment of error, Jones claims that detectives repeatedly testified improperly about what they were told during the course of their investigation in violation of *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181. But *Ricks* doesn't apply here.

{¶22} *Ricks* was a case involving the admission of statements made to law enforcement officers that were repeated by officers during their testimony. The argument for allowing the statements made to the officers had been that they were not being offered for the truth of the matters asserted, but rather for the purpose of explaining why the investigation proceeded in the manner that it did. *Id.* at ¶ 20.

9

Therefore, the statements were not hearsay. *Id.*, citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). The court in *Ricks* set forth a test to guard "against allowing prosecuting attorneys [using] police-officer testimony to introduce unfairly prejudicial out-of-court statements, including testimony that connects the defendant to the crime at issue." *Ricks* at ¶ 24, citing *State v. Humphrey*, 10th Dist. Franklin No. 07AP–837, 2008-Ohio-6302, ¶ 11.

{¶23} But in this case, none of the instances cited by Jones involve the officer testifying to the out-of-court statements of another. In each case, the detective only testified to where received information had led him. In one cited instance, the following exchange took place between the prosecutor and the detective:

> Q. And in this case, on October 6, 2014, did you receive in the course of your investigation a Crime Stoppers tip?
>
> A. Yes.
>
> Q. Where did the tip lead you?
>
> MS. UNDERWOOD: Objection pursuant to *State v. Ricks*.
>
> THE COURT: Overruled.
>
> Q. Where did that tip lead you?
>
> A. To the Subway store on Beechmont Avenue, Mt. Washington.

All of the instances cited by Jones contain the same type of exchange. In none of the instances did the officer testifying actually say what the third party had told him. Since none of the instances involve out-of-court statements, *Ricks* does not apply. We overrule Jones's fourth assignment of error.

**Sufficiency: Operable Weapon and
Ownership of Property Stolen**

{¶24} In his fifth assignment of error, Jones claims that his convictions were based upon insufficient evidence. In a challenge to the sufficiency of the evidence, the question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶25} Jones first argues that he could not be convicted of aggravated robbery or having a weapon while under a disability because the state failed to prove that the weapon at issue was operable. Dilbag testified that "someone came suddenly and pointed a gun at me. * * * He showed it to me, he like pointed a gun at me." The weapon was not discharged during the incident, and no weapon was recovered.

{¶26} The Ohio Supreme Court has addressed the level of proof required to meet the burden of proof regarding the operability of a firearm.

> In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

*State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). This court has repeatedly held that the state can make that showing by circumstantial evidence. *See State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 18.

{¶27} In this case, Jones brandished the weapon while committing the robbery of the Sunoco. He pointed the weapon at Dilbag, implicitly threatening to

11

shoot him if he did not comply with his demands. This was sufficient circumstantial evidence to allow the jury to conclude that the firearm was operable at the time of the offense.

{¶28} Jones also claims that his conviction for aggravated robbery was based on insufficient evidence because the indictment alleged that he stole money from Dilbag and not from Sunoco. Since Jones stole no money from Dilbag, Jones reasons, he could not be convicted of aggravated robbery.

{¶29} R.C. 2913.01(D) defines "owner" of property as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." A store employee is the "owner" of the store's property for the purposes of the aggravated-robbery statute. *See State v. McCoy*, 5th Dist. Licking No. 05-CA-29, 2006-Ohio-56, ¶ 105. For purposes of Jones's aggravated-robbery conviction, Dilbag was the owner of the money and cigarettes taken. We overrule his fifth assignment of error.

### Manifest Weight

{¶30} In his final assignment of error, Jones claims that his convictions were against the manifest weight of the evidence. When reviewing the manifest weight of the evidence, this court must review the entire record, weigh the evidence, and consider the credibility of the witnesses to determine whether the jury lost its way and committed such a manifest miscarriage of justice in convicting Jones that his conviction must be reversed. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶31} Jones first argues that he could not have been the person who committed the robbery because the person who committed the offense was five feet

four inches to five feet six inches tall and he is five feet 11 inches tall. But the estimate given by Dilbag was based upon seeing him while standing on a platform that was six inches high. And while Jones has pointed to a screenshot of the surveillance video which shows the perpetrator passing the measuring strip on the door at near the five-and-a-half-feet marker, the image clearly shows an individual who is hunched down. But viewing the perpetrator as he entered the store, at a time when he was standing straighter, his head passes the strip approximately six inches higher than when he leaves.

{¶32} Jones also again raises the issues that the state failed to prove that the firearm was operable, and that he had stolen money from Dilbag rather than Sunoco. But as we have previously held, the state presented sufficient circumstantial evidence of the gun's operability, and Dilbag was an "owner" of the currency stolen for purposes of the aggravated-robbery conviction. On this record, the jury did not lose its way or create a manifest miscarriage of justice. We overrule Jones's sixth assignment of error.

## Conclusion

{¶33} Having considered and overruled all six of Jones's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM** and **ZAYAS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

13