[Cite as *State v. Lanter*, 2018-Ohio-3127.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170385 |
| | | TRIAL NO. B-1603386B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| ROGER LANTER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 8, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Law Office of Amy R. Williams* and *Amy R. Williams,* for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Following a jury trial, defendant-appellant Roger Lanter appeals from his conviction for burglary. Lanter broke into the victim's home and stole several pieces of her jewelry. When the victim returned home and discovered Lanter, he fled. The victim's neighbor saw Lanter running through her backyard. Her husband followed Lanter in his car and saw him get into the passenger side of another vehicle, which he described to a 911 dispatcher. Cincinnati police officers found Lanter in a vehicle matching this description. They arrested him, and found the victim's stolen jewelry in the vehicle.

{¶2}   Raising six assignments of error, Lanter argues that: (1) his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence; (2) the trial court erred in failing to instruct the jury on the lesser-included offense of receiving stolen property; (3) prosecutorial misconduct during closing arguments prejudiced the jury; (4) the trial court erred in admitting into evidence physical evidence that had no probative value but was highly prejudicial; (5) the trial court erred in admitting evidence of Lanter's prior bad acts; and (6) his trial counsel was ineffective. We find no merit in any assignment of error, and affirm the trial court's judgment.

### The Burglary

{¶3}   On June 17, 2016, the Cincinnati police were dispatched to a home on William Howard Taft Road after a reported breaking and entering.  The victim, an 86-year-old woman, lived alone.  She had left her home for church around 12:00 p.m. and returned after mass had ended at 12:30 p.m.  Upon her return, she noticed that window panes on her backdoor were broken and that the door was slightly ajar.  As she entered her home, she heard a man's voice.  Standing in the kitchen, she saw a man walk into her living room.  He was between six and eight feet away from her.

2

The victim called out to him, and the man turned towards her, giving her a view of the side of his face. She later described the intruder as a Caucasian male with blondish, reddish hair that reached to his ears, carrying a beige computer bag. Though the victim stated that the intruder was not wearing gloves, no DNA evidence or fingerprints were recovered from the home. The intruder ran upstairs, and the victim fled from her home. She asked her neighbor's landscaper to call the police.

{¶4} The victim's neighbor, Blaire Warren, was in her kitchen, facing the backyard through her kitchen window. She saw the intruder sprinting towards her open backdoor, carrying a blue or black backpack. Ms. Warren described the intruder as a Caucasian male with light hair, wearing jean shorts and a white tee shirt. She screamed once, and the intruder paused briefly. Ms. Warren went to her backdoor and shouted at him. The intruder stopped a second time, and looked directly at her. She slammed her backdoor, and called out to her husband. She also called the police.

{¶5} Cameron Warren, responding to his wife's scream, saw a Caucasian male with light, short hair, under six feet in height, wearing jean shorts, and carrying a dark backpack pass through his front yard. He followed the intruder in his car, staying out of sight. He saw a woman driving a gray Hyundai stop and pick up the intruder. Mr. Warren followed the car and reported its description and license plate number to the police.

{¶6} Relying on radio reports of the description and path of the Hyundai, Cincinnati police Sergeant Stephen Lang found Lanter and another person in the parked vehicle. The vehicle's license plate number was almost identical to the one listed by Mr. Warren. When Sergeant Lang attempted to take Lanter into custody, Lanter struggled. Concerned that Lanter could use a paint-scraping tool located on the car seat as a weapon, Sergeant Lang seized the tool. Sergeant Lang and the other

officers recovered a blue and black backpack and gloves from the vehicle. The victim's stolen jewelry was located in the vehicle's center console.

{¶7} Detective Gina Scott responded to the victim's home and prepared a photo lineup for the victim and the Warrens to view. When Detective Scott heard the broadcast description of the suspect, she immediately thought of Lanter, and included his photo in the lineup. Lanter's photo showed a tattoo on his neck. Detective Charles Zopfi displayed these photos to the victim and eyewitnesses in a blinded-administrator lineup. In a blinded-administrator lineup, a permitted practice, the administrator knows the identity of the suspect but does not know which photo in the lineup is being viewed by the eyewitness. *See* R.C. 2933.83(B)(1).

{¶8} The victim viewed the photo lineup and identified Lanter as the man she had found in her house. She stated she was 50 percent or more certain she had chosen correctly, as her look at him was very brief. Ms. Warren also identified Lanter, although she did not recognize the tattoo on his neck. She later testified in court that she was 85 percent certain this was the man she had seen, and that but for the tattoo, she would have been 100 percent certain.

{¶9} Lanter was charged with one count of burglary, a second-degree felony. The same indictment also charged Lanter with a receiving-stolen-property offense against a separate victim. He pled guilty to that offense, but not guilty to the burglary offense. A jury found him guilty of burglary, and the court imposed an aggregate sentence of six years in prison. This appeal followed.

### *Prejudicial-Evidence Challenges*

{¶10} For clarity, we will address Lanter's claims in temporal order with respect to the evidence adduced at trial and the state's closing arguments.

{¶11} In his fourth assignment of error, Lanter argues that the trial court erred in admitting the gloves and paint-scraping tool found in the vehicle into evidence. He claims that these items were not relevant to the charge of burglary and

that their admission unduly prejudiced the jury. *See* Evid.R. 402 and 403. Because Lanter did not object to the admission of this evidence at trial, we examine its admission only for plain error. *See* Evid.R. 103(D); *see also* Crim.R. 52(B). Plain error is an error so extreme that it affected the outcome of the proceedings and must be corrected to prevent a manifest miscarriage of justice. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23.

{¶12} At trial, Sergeant Lang described his struggle to arrest Lanter. He explained that he seized the paint-scraping tool because he was concerned that Lanter could have reached it during their struggle. Various police officers testified that gloves were found in the vehicle. The prosecution argued that Lanter had worn the gloves during the burglary to explain the lack of fingerprint evidence recovered from the victim's home.

{¶13} The paint-scraping tool and gloves were only mentioned briefly during trial, and the state produced ample other evidence of guilt, including eyewitness identifications of Lanter. Thus, we hold that the admission of the paint-scraping tool and the gloves was not so prejudicial that, without it, the trial outcome would have been different. *See* Crim.R. 52(B). The fourth assignment of error is overruled.

{¶14} In his fifth assignment of error, Lanter argues that the trial court erred in permitting police officers to explain to the jury that they had to assemble and administer a blinded-administrator photo lineup to the eyewitnesses because Lanter was well-known by the detectives at the scene of the burglary. Lanter argues that testimony that he was well-known to the police invited the jury to speculate on his previous criminal behavior. Under Evid.R. 404(B), the prosecution generally cannot present evidence about a person's character or prior bad acts to demonstrate a tendency to commit a particular crime. Since Lanter did not object to the officers' testimony, we review only for plain error. *See* Evid.R. 103(D).

{¶15} Here, none of the officers expressly told the jury of Lanter's extensive criminal record, or why the officers knew Lanter. Given the vagueness of their testimony, coupled with its use only to explain the administration of the photo lineup, we hold that the outcome of the trial would not have been otherwise absent the officers' testimony that Lanter was well-known to the police. *See* Crim.R. 52(B). The fifth assignment of error is overruled.

### *Challenge to the Jury Instructions*

{¶16} In Lanter's second assignment of error, he alleges that his rights were violated when the trial court failed to instruct the jury on the lesser-included offense of receiving stolen property. Lanter did not object to the jury instructions on this basis at trial, or ask for an instruction on receiving stolen property, and thus has forfeited all but plain error. *See* Crim.R. 30(A) and 52(B).

{¶17} To determine if it should give an instruction for a lesser-included offense, the trial court should consider whether: (1) one offense carries a greater penalty than the other; (2) some element of the greater offense is not required by statute to prove the lesser offense; and (3) the greater offense as defined by statute cannot be committed without the lesser offense being committed. *See State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus. If this three-part test is satisfied, and a jury could reasonably convict a defendant of the lesser-included offense, the trial court is required to give an instruction on the lesser-included offense. *Id.* at ¶ 13.

{¶18} To convict Lanter of burglary, the state had to prove that Lanter had trespassed in an occupied structure where a person other than the offender or an accomplice was present or was likely to be present with the intent to commit a criminal offense. *See* R.C. 2911.12. To be convicted of receiving stolen property, a person must receive, retain, or dispose of another's property. *See* R.C. 2913.51. The crime of burglary does not include the element of theft, and may be proved without

demonstrating that the perpetrator received, retained, or disposed of the property of another. It is not necessary to prove that a theft offense occurred to prove burglary, but only that the perpetrator trespassed with the intent to commit a felony. It is possible to commit the greater offense of burglary without committing the lesser offense of receiving stolen property. Thus receiving stolen property is not a lesser-included offense of burglary. *See Evans* at paragraph two of the syllabus. Because receiving stolen property is not a lesser-included offense of burglary, Lanter could not have been prejudiced by the failure to give a jury instruction on receiving stolen property. The second assignment of error is overruled.

### Prosecutorial-Misconduct Claim

{¶19} In his third assignment of error, Lanter alleges prosecutorial misconduct in closing arguments. Lanter points to two instances in the prosecutor's closing arguments when she mentioned a gun, although there was no evidence that Lanter used a gun to commit the burglary. The prosecutor discussed a gun in hypothetical scenarios to explain how stress can account for shortcomings in eyewitness testimony. Lanter argues these remarks were made to incite juror fear and unfairly prejudice the jury against him. Since Lanter did not object to these comments at trial, we review for plain error. *See* Crim.R. 52(B). Prosecutorial misconduct rises to the level of plain error only if it is clear the defendant would not have been convicted in the absence of the improper comments. *State v. Jones*, 1st Dist. Hamilton No. C-160826, 2018-Ohio-1130, ¶ 12. We consider the state's closing argument in its entirety when determining whether it prejudiced the defendant. *State v. Slagle*, 65 Ohio St.3d 597, 607 N.E.2d 916 (1992).

{¶20} After examining the record, we cannot say that the prosecutor's comments were so inflammatory that without them, the result at trial would have been different. *See Jones* at ¶ 200. The jury had heard the eyewitness testimony, none of which implied Lanter used or carried a gun. Further, Lanter's counsel

reminded the jury immediately after the prosecutor's closing argument that there was no evidence that Lanter had used a gun during the burglary. The third assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶21} In Lanter's sixth assignment of error, he contends that he was denied the constitutional guarantee of the effective assistance of counsel when his trial counsel failed to file a motion to suppress the photo lineup, failed to object to the police officers' testimony about familiarity with Lanter, failed to object to irrelevant and prejudicial evidence, and failed to request a lesser-included-offense jury instruction.

{¶22} The test for ineffective assistance of counsel is well established. Lanter must demonstrate that his counsel's performance was unreasonably deficient, and that the deficient performance was so prejudicial that he was denied a reliable and fundamentally fair proceeding. *See Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. A reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998).

{¶23} First, Lanter argues that his trial counsel should have filed a motion to suppress the photo lineup because the police detective who had administered the lineup failed to properly document the procedure employed. But we have held that "noncompliance with R.C. 2933.83(B) alone is insufficient to warrant suppression." *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8. Thus the failure to attempt to suppress the photo lineup on this basis was not unreasonably deficient.

Moreover, Lanter's trial counsel asked for and received an instruction to the jury noting the improper completion of the lineup forms.

{¶24} In our resolution of the second and fourth assignments of error, we have held that Lanter was not entitled to a lesser-included-offense instruction and was not prejudiced by police testimony and the admission of the paint-scraping tool and gloves, thus we hold that counsel's performance was not unreasonably deficient in failing to raise timely objections. The sixth assignment of error is overruled.

### Sufficiency and Weight-of-the-Evidence Claims

{¶25} Lanter's first assignment of error challenges the manifest weight and sufficiency of the evidence adduced to support his conviction for burglary.

{¶26} Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The jury was entitled to reject Lanter's theory that the state had failed to prove the offense of burglary because there was no evidence of his DNA at the burglary scene, and because of inconsistencies in the eyewitness descriptions of the intruder, including the length of the intruder's hair and the color of his bag.

{¶27} But the state presented ample evidence, including eyewitness identifications of Lanter as the perpetrator of the burglary by the victim and Ms. Warren, Mr. Warren's description of the escape vehicle and its route to the park where Lanter was located less than 30 minutes after the burglary, and the discovery of the victim's stolen property and Lanter's backpack in the vehicle. As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, the jury, in resolving conflicts in the testimony, could properly have found Lanter guilty of the charged crime and thus did not lose its way. *See*

9

*State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶28} The record also reflects substantial, credible evidence from which to reasonably conclude that the state had proved all elements of the charged crime beyond a reasonable doubt, including that Lanter had trespassed in the victim's home, an occupied structure where a person other than the offender or an accomplice was likely to be present with the intent to commit a criminal offense, here theft. *See* R.C. 2911.12; *see also State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The first assignment of error is overruled.

### Conclusion

{¶29} In sum, we find no merit to Lanter's six assignments of error. Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS** and **Myers, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.